[No. A040504. First Dist., Div. Two. May 23, 1989.]

BETTE SIEGEL et al., Plaintiffs and Appellants, v.
AMERICAN SAVINGS & LOAN ASSOCIATION et al., Defendants
and Respondents.

COUNSEL

Thomas E. Alborg, Cary L. Dictor, Samuel E. Goldstein and Alborg & Dictor for Plaintiffs and Appellants.

Michael D. Bergeisen, Michael D. Early, Steefel, Levitt & Weiss, Richard G. Carlston, Lise A. Pearlman, Lawrence W. Paradis and Miller, Starr & Regalia for Defendants and Respondents.

OPINION

**BENSON, J.**—Appellants are the named plaintiffs in a class action. They appeal from an order dismissing the action after the trial court sustained, without leave to amend, the demurrer of defendants Citicorp Savings & Loan Association (Citicorp), and Citicorp Savings Service Corporation (CSSC) (collectively defendants) to the second amended complaint. The trial court sustained the demurrer on two grounds: (1) plaintiffs' state claims were preempted by federal law contained in the Home Owners' Loan Act of 1933 (HOLA), 12 United States Code section 1461 *et seq.*, and by regulations issued by the Federal Home Loan Bank Board (the Board) and (2) plaintiffs' federal claims under HOLA are barred by the doctrine of primary jurisdiction which requires that a party exhaust its administrative remedies before the Board prior to seeking judicial relief. Plaintiffs also appeal from the order denying their motion to reconsider the order sustaining the demurrers. We do not find plaintiffs' claims preempted by federal law and reverse the order dismissing the action.

The second amended complaint alleges 12 causes of action against defendants charging violation of the Cartwright Act, civil conspiracy, bad faith denial of the contract, unfair competition, breach of contract, fraud, breach of agency duty, and seeking a constructive trust and an accounting. The trial court granted defendants' request to allow them to bifurcate their demurrers to the second amended complaint by allowing them to first file demurrers on all grounds based on federal law and later, if necessary, to file additional demurrers to the individual causes of action.

Defendants demurred to the entire complaint and to each cause of action against them on the grounds the state law causes of action are barred by the doctrine of federal preemption, the federal causes of action under HOLA fail to state a cause of action under that statute and plaintiffs have failed to plead they have exhausted their administrative remedies, as required by the doctrine of primary jurisdiction.

SUMMARY OF SECOND AMENDED COMPLAINT

We summarize the allegations of the second amended complaint with respect to Citicorp and CSSC. Plaintiffs are California residents who own an interest in California real property which is subject to a deed of trust, the beneficial interest of which is or was held by Citicorp or its predecessor. At the time of recordation of the deed of trust, plaintiffs were required to pay to Citicorp a reconveyance fee which was identified as a "trustee's fee" or a "trustee's acceptance fee."

■ A deed of trust is a three-party contract among the beneficiary-lender, the trustor-borrower, and the trustee. The trustee holds title to the property until the debt is repaid, at which time the title held by the trustee is reconveyed to the borrower. ■ Reconveyance is accomplished by the beneficiary executing a request for reconveyance. When the trustee receives the request, the trustee executes and records a deed of reconveyance transferring the security interest to the present owner of the property. Recordation of the deed of reconveyance extinguishes the lien on the property created by the deed of trust.

Citicorp has a standard form deed of trust which identifies its wholly owned subsidiary, CSSC, as trustee. Citicorp's predecessor also used a deed of trust form which required borrowers to accept trustees chosen by the predecessor. Numerous other companies in California were and are willing to act as trustees under deeds of trust and these companies either require no payment for reconveyance or require payment at the time reconveyance is requested.

Where a deed of trust allows imposition of a reconveyance fee, California Civil Code section 2941 controls the method by which the trustee may charge the fee. Section 2941 does not allow collection of the reconveyance fee up to 30 years or more before the date the loan is repaid.

Since 1975, Citicorp has engaged in an ongoing business practice of charging for and collecting fees for reconveyance services at the time loans are originally processed and a particular deed of trust is recorded. Furthermore, Citicorp is now collecting the reconveyance fee at a time when it is uncertain the reconveyance would ever be provided. Citicorp frequently sells large pools of real property loans in the secondary mortgage market, including to the Federal National Mortgage Association (FNMA). When such sales are made, Citicorp does not account for reconveyance fees to the purchasers of such loans. Some of these new beneficiaries have charged plaintiffs a second reconveyance fee.

Since 1977, FNMA has required that a deed of trust for a loan it purchases must contain a provision requiring reconveyance of the trust deed without charge. In order to be able to sell loans to FNMA, Citicorp disguised the reconveyance fees it charged by using other names. In this manner, Citicorp collected reconveyance fees despite FNMA regulations and despite the express agreement not to charge such reconveyance fees which is set forth in Citicorp's FNMA standard form deeds of trust. Citicorp has failed to refund the prepaid reconveyance fees to the borrower-trustors when the real property securing the loan is sold by the borrower-trustor, although any subsequent reconveyance would not inure to the benefit of the borrower-trustor, in violation of Civil Code section 2941, subdivision (e). Citicorp's manner of collecting reconveyance fees is in violation of HOLA and the regulations implementing HOLA.

## DISCUSSION

### A. Preemption

On appeal, plaintiffs contend federal law neither expressly nor impliedly preempts state law with respect to their claims. They also assert there is no conflict between state and federal law which would require preemption by federal law.

### 1. Express Preemption

"In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress. Federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. Second, congressional intent to pre-empt state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation. . . . [¶] As a third alternative, in those areas where Congress has not completely displaced state regulation, federal law may nonetheless pre-empt state law to the extent it actually conflicts with federal law. Such a conflict occurs either because 'compliance with both federal and state regulations is a physical impossibility,' or because the state law stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' Nevertheless, pre-emption is not to be lightly presumed." (*California Federal S. & L. Assn. v. Guerra* (1987) 479 U.S. 272, 280-281 [93 L.Ed.2d 613, 623, 107 S.Ct. 683], citations omitted.) In *R. J. Reynolds Tobacco Co. v. Durham County* (1986) 479 U.S. 130, 149 [93 L.Ed.2d 449, 467, 107 S.Ct. 499], the

court stated: "Although the regulations are not themselves control-
ling on the pre-emption issue, where, as in this case, Congress has entrusted
an agency with the task of promulgating regulations to carry out the pur-
poses of a statute, as part of the pre-emption analysis we must consider
whether the regulations evidence a desire to occupy a field completely. Pre-
emption should not be inferred, however, simply because the agency's regu-
lations are comprehensive." (Citations omitted.)

 Defendants assert plaintiffs' state law causes of action are expressly
preempted by the Board's regulation found at 12 Code of Federal Regula-
tions, section 545.2, which provides: "The regulations in this Part 545 are
promulgated pursuant to the plenary and exclusive authority of the Board
to regulate all aspects of the operations of Federal associations, as set forth
in section 5(a) of the Home Owners' Loan Act of 1933, 12 U.S.C. 1464, as
amended. This exercise of the Board's authority is preemptive of any state
law purporting to address the subject of the operations of a Federal associa-
tion."

 Preemption issues are resolved through the process of statutory
interpretation. (*United Services Auto. Ass'n.* v. *Muir* (3d Cir. 1986) 792 F.2d
356, 363.) We look to the language of the statute and to the intent of
Congress. "The language of HOLA, as well as the history that lies
behind its enactment, demonstrate that there is a strong federal interest in
the uniform treatment of the federally chartered savings and loans associa-
tions. Congress initially enacted HOLA and its regulatory structure in
response to a crisis in the nation's private home financing system. [Citation.]
This crisis had developed at least in part as a result of the inconsistent and
ill-advised practices of the various states. As noted by the Ninth Circuit,
'the states had developed a hodgepodge of savings and loan laws and regula-
tions, and Congress hoped that [the Bank Board's] rules would set an
example for uniform and sound savings and loan regulations.' (*Conference
of Federal Savings & Loan Ass'ns* v. *Stein,* 604 F.2d 1256, 1258, (9th Cir.
1979), *summarily aff'd,* 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754
(1980), *citing* T. Marvell, *The Federal Home Loan Bank Board* at 26
(1969)." (*Eureka Federal Sav. and Loan Ass'n* v. *Kidwell* (N.D.Cal. 1987)
672 F.Supp. 436, 439.)

Plaintiffs assert that this regulation means that the Board's "exercise" of
its authority to issue regulations is preemptive of any state law attempting
to cover the subject of the operation of a Federal association. They contend
the Board has not "exercised" its authority to regulate the charging of
reconveyance fees. It is true that defendants point to no specific regulation
governing the charging of reconveyance fees at the time the loan is initiated.

In support of their argument that the Board has "exercised" its authority in the area of reconveyance fees, defendants rely on two regulations, 12 Code of Federal Regulations, sections 545.32(b)(5) and (6).[1] The first regulation deals with "initial charges" such as title examination and appraisal fees.

The second regulation allows the association to collect in advance from the borrower payments of annual assessments such as taxes and insurance premiums. Neither of these section mentions reconveyance fees. The second amended complaint specifically alleges the reconveyance fees which are the subject of the action are not initial costs of processing a loan. ■ "Because this appeal arises from a judgment entered after the sustaining of a general demurrer, we must, under established principles, assume the truth of all properly pleaded material allegations of the complaint in evaluating the validity of the trial court's action." (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]; *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 177 [216 Cal.Rptr. 661, 703 P.2d 1].)

■ Neither party has cited any case, nor has our independent research uncovered any case, discussing the preemptive effect of 12 Code of Federal Regulations, section 545.2. ■ Preemption of state law by federal regulation is not favored. We will not find express preemption unless a regulation clearly so states. (*Chicago & N. W. Tr. Co.* v. *Kalo Brick & Tile Co.* (1981) 450 U.S. 311, 317 [67 L.Ed.2d 258, 265, 101 S.Ct. 1124].) ■ It is the burden of the party claiming preemption to prove it. (*Elsworth* v. *Beech Aircraft Corp.* (1984) 37 Cal.3d 540, 548 [208 Cal.Rptr. 874, 691 P.2d 630]; *Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 937 [216 Cal.Rptr. 345, 702 P.2d 503].)

■ The Board is capable of saying it means to expressly preempt all state law in an area. In enacting the due-on-sale regulation, 12 Code of Federal Regulations, section 545.8-3(f), the Board in a preamble expressed

---

[1] 12 Code of Federal Regulations, section 545.32(b)(5) provides: "Except as provided in § 563.35(d) of this chapter, an association may require a borrower to pay necessary initial charges connected with making a loan, including the actual costs of title examination, appraisal, credit report, survey, drawing of papers, loan closing, and other necessary incidental services and costs, in such reasonable amounts as the board of directors may fix. The association may collect the charges from the borrower and pay the persons rendering services."

12 Code of Federal Regulations, section 545.32(b)(6) states: "An association may require that all or part of the estimated annual taxes, assessments, insurance premiums, and other charges on any loan be paid in advance to the association, in addition to interest and principal payments on the loan, to enable the association to pay such charges as they become due, consistent with the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. 2601-2617) ('RESPA')."

its intent "that the due-on-sale practices of federal savings and loans be governed 'exclusively by Federal law.' [Citation.] The Board emphasized that '[f]ederal associations shall not be bound by or subject to any conflicting State law which imposes different . . . due-on-sale requirements.' " (*Fidelity Federal Sav. & Loan Assn.* v. *De La Cuesta* (1982) 458 U.S. 141, 147 [73 L.Ed.2d 664, 671, 102 S.Ct. 3014].)

Section 545.2 contains no such statement that federal law is preemptive of all state common law claims. Indeed, the fact that such preemption language appears in the due-on-sale regulation suggests that the Board does not believe it has passed a regulation preempting all state laws which affect federally chartered associations. We find no express preemption of plaintiffs' claims.

### 2. Implied Preemption

Defendants rely primarily on their argument that federal law has impliedly "occupied the field" of the regulation of operations of federal savings and loan associations. Defendants assert, and we agree, that HOLA and the Board's regulations create a uniform and comprehensive federally regulated thrift system. We also agree that Congress granted the Board broad authority to regulate the operation of these associations and that the Board has exercised this authority by issuing detailed regulations governing the associations. We do not find these facts alone determinative of the issue.

In *De La Cuesta,* the Supreme Court expressly suggested that Congress may not have occupied the entire field: "As we noted above, a savings and loan's mortgage lending practices are a critical aspect of its 'operation,' over which the Board unquestionably has jurisdiction. Although the Board's power to promulgate regulations exempting federal savings and loans from the requirements of state law may not be boundless, in this case we need not explore the outer limits of the Board's discretion.' (*Fidelity Federal Sav. & Loan Assn.* v. *De La Cuesta, supra,* 458 U.S. at p. 167 [73 L.Ed.2d at p. 684].) ▪ Comprehensiveness of federal regulation alone, is not sufficient to establish implied preemption. Again, the United States Supreme Court has said: "We are even more reluctant to infer pre-emption from the comprehensiveness of regulations than from the comprehensiveness of statutes. As a result of their specialized functions, agencies normally deal with problems in far more detail than does Congress. To infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive. Such a rule, of course, would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisprudence." (*Hillsborough County* v. *Automated*

*Medical Labs.* (1985) 471 U.S. 707, 717 [85 L.Ed.2d 714, 724, 105 S.Ct. 2371].) ▇ Our task is to determine whether the field which has been preempted by federal regulation is broad enough to cover plaintiffs' state causes of action.

Defendants rely on an oft-repeated quote from *People, etc.* v. *Coast Federal Sav. & Loan Ass'n* (S.D.Cal. 1951) 98 F.Supp. 311, 316: "The Board has adopted comprehensive rules and regulations concerning the powers and operations of every Federal savings and loan association from its cradle to its corporate grave." Defendants also cite *Conference of Federal Sav. & Loan Ass'ns* v. *Stein* (9th Cir. 1979) 604 F.2d 1256, *affirmed* (1980) 445 U.S. 921 [63 L.Ed.2d 754, 100 S.Ct. 1304]. In *Coast,* the issue before the court was whether the Board had primary jurisdiction over an action filed by the People and the superintendent of banks of the State of California alleging that Coast was conducting business in the state as a savings bank which it could not do unless it complied with state law. In *Stein,* the court found California's attempt to regulate and discipline federal savings and loan associations in the area of anti-redlining practices under California's Housing Financial Discrimination Act of 1977 to be prohibited under the doctrine of preemption. The issues presented in these two cases go to the heart of the reasons Congress enacted HOLA—to make regulation of federal savings and loan associations uniform and to end the "hodgepodge" of differing state rules. These cases do not address the issue before us—whether state common law causes of action are preempted by HOLA and the Board's regulations. *Coast* and *Stein,* however, serve to highlight the distinction between state regulation of associations in which federal interest is great and actions for breach of contract and fraud in which there appears no such federal interest.

Plaintiffs rely on *Derenco, Inc.* v. *Benj. Franklin Fed. Sav. & Ass'n Loan* (1978) 281 Ore. 533 [577 P.2d 477], in which the Oregon Supreme Court held that the plaintiffs claims were to be determined by state, not federal, common law. In that case, plaintiffs brought a class action in which they sought the income derived by the association from investment of funds deposited by borrowers for the payment of taxes and insurance premiums on their dwellings. The trial court required the association to account for profits realized on these reserve accounts. In affirming, the Oregon Supreme Court found plaintiffs' claims were not preempted by HOLA or the Board's regulations under the "occupation of the field" doctrine: "Congressional intent to occupy a field also is sometimes found when the federal regulatory scheme is pervasive or comprehensive in its coverage of the subject matter. When Congress has undertaken thorough, and therefore seemingly complete, regulation in an area, the inference is that the states are deprived of a power to take action on the same subject. *Rice* v. *Santa Fe Elevator Corp.,*

331 US 218, 230, 67 S Ct 1146, 91 L Ed 1447 (1947). In recent cases, however, the court has limited application of this approach to preemption by narrowly defining the field regulated by Congress. Detailed regulation of a wide range of problems will not serve to preempt state law if the Court determines that the state law has its effect in an area outside the thrust of the federal enactment." (*Id.* at p. 543 [577 P.2d at p. 484].)

The Oregon Supreme Court's observation that the United States Supreme Court has limited the application of the implied preemption doctrine by narrowing the definition of the field preempted has proved correct and has continued in cases decided since *Derenco*. In *Fort Halifax Packing Co.* v. *Coyne* (1987) 482 U.S. 1, 7-8 [96 L.Ed.2d 1, 9, 107 S.Ct. 2211, 2215-2216], the court narrowly construed the field preempted by ERISA to cover state regulation of employee pension plans but not a state statute requiring severance pay to employees in plant closings even though severance benefits are included in ERISA. In *California Coastal Comm'n* v. *Granite Rock Co.* (1987) 480 U.S. 572 [94 L.Ed.2d 577, 107 S.Ct. 1419], the Supreme Court reviewed federal statutes regulating federally owned land. The court held state regulation of land use planning of federally owned land was preempted by federal law but found that California could impose environmental regulations on a company mining that land.

Plaintiffs cite *Gulf Fed. S. & L., etc.* v. *Federal Home Loan Bank Bd.* (5th Cir. 1981) 651 F.2d 259, in which the court held the Board did not have the power under 12 United States Code 1464(d)(2)(A), to issue a cease and desist order based upon the association's alleged breach of its loan agreement with borrowers. Some loan agreements used by the association provided that interest would be charged on the basis of a 360-day year and others provided for interest charges based on a 365-day year. Interest was charged by using the 365/360 method under both forms of the loan agreements. The court disagreed that this practice constituted an unsafe or unsound practice within the meaning of 1464(d)(2)(A) of HOLA (12 U.S.C. § 1464(d)(2)(A)) which the Board could regulate. The court also ruled that the issue of whether the association had breached the loan agreement should be decided under state rather than federal common law. The court relied on the rationale that issues involving the internal management of an association should be decided by federal law but that contracts between the association and its borrowers do not implicate sound management or the insurance liability of the federal government and thus do not require a uniform federal rule.

Defendants correctly point out that this internal/external distinction was rejected by the Supreme Court in *Fidelity Federal Sav. & Loan Assn.* v. *De La Cuesta, supra,* 458 U.S. at p. 170, fn. 23 [73 L.Ed.2d at p. 686]. *Gulf* has not been overruled, however, and the criticism does not affect the ruling

that breach of contract by the association is not an unsafe or unsound practice. In *De La Cuesta,* the Supreme Court stated that the regulation allowing federal associations to enforce due-on-sale clauses and to preempt state law on the subject was an appropriate exercise of the Board's authority since its purpose was to insure financial stability of federal associations. (*Id.* at p. 170 [73 L.Ed.2d at p. 685].)

Plaintiffs also rely on a line of cases determining that federal common law should not be applied to state common law issues raised in actions involving federally chartered associations. In *Borzello* v. *Charles D. Sooy & C. Darrell Sooy* (N.D.Cal. 1977) 427 F.Supp. 332, a borrowers class action was remanded to state court since the action did not arise under federal law and there was no federal jurisdiction of the action. The complaint alleged a federal savings and loan association breached its loan agreements, its fiduciary duty and violated various California statutes. (Accord *Goldman* v. *First Federal Sav. & L. Ass'n of Wilmette* (7th Cir. 1975) 518 F.2d 1247 [federal claims dismissed for failure to state a claim but state causes of action to be determined by state courts]; *DeSimone* v. *Warwick Federal S. & L. Ass'n* (D.R.I. 1980) 482 F.Supp. 1190 [court refused to construe the Board's regulatory power broadly enough to encompass state law contract claims]; *Wicker* v. *First Financial of La. Sav. & Loan Ass'n* (M.D.La. 1987) 665 F.Supp. 1210 [court with federal jurisdiction of action under the Anti-Tying Act declined to exercise pendent jurisdiction over state claims]. Plaintiffs also rely on *Larwood Co.* v. *San Diego Fed. S. & L. Assn.* (1960) 185 Cal.App.2d 450 [8 Cal.Rptr. 362], in which the court determined the Board's administrative remedy provisions did not apply to private disputes between borrowers and federal associations.

Defendants attempt to distinguish these cases on the grounds they do not discuss preemption and *Larwood* does not discuss whether state or federal law should be applied but rather relies on the same "internal management" rationale discredited in *De La Cuesta*. Defendants rely instead on cases holding that the Board's administrative remedies must be exhausted prior to court action which we shall discuss in the next section.

### 3. Preemption by Conflict between State and Federal Law

Lastly, defendants assert that even if there were no complete preemption by federal law, plaintiffs' claims would be preempted because of direct conflicts between state and federal law. They do not assert state law stands as an obstacle to Congress' objectives. Our holding that we find no express general preemption in 12 Code of Federal Regulations section 545.2 disposes of a portion of defendants' contention. Defendants cite the same

regulations, 12 Code of Federal Regulations, sections 545.32(b)(5) and 545.32(b)(6), referred to in their argument that the Board has issued regulations on the subject of the complaint. Defendants claim these regulations conflict with the interpretation given to Civil Code section 2941 by plaintiffs in their complaint. As we previously stated, the allegations of the second amended complaint, which we must accept as true, state the reconveyance fees challenged by plaintiffs are not initial charges regulated by the Board. ▮ In determining whether a state law conflicts with federal statutes or regulations, the federal-state conflict must be actual and unavoidable, not merely possible. *(Askew* v. *American Waterways Operators, Inc.* (1973) 411 U.S. 325, 336-337 [36 L.Ed.2d 280, 288-289, 93 S.Ct. 1590].) ▮ Defendants offer no such conflict.

Defendants also claim plaintiffs' fraud causes of action are preempted by regulations setting forth what an association must disclose to a borrower. Defendants claim plaintiffs are asserting the associations must disclose more than required by federal regulations. As we read the second amended complaint, plaintiffs attempt to allege Citicorp intended to defraud plaintiffs by naming the reconveyance fee a "trustee's fee" and by charging plaintiffs a fee for services they did not intend to perform in the immediate future. The allegations are not a model of clarity but we do not believe the gist of the cause of action to be failure to disclose information.

Defendants also argue that plaintiffs' state cause of action for violation of the Cartwright Act is preempted by section 1464 of HOLA.[2] Defendants argue the tying alleged by plaintiffs is allowed by this section and, thus, plaintiffs cause of action is preempted by HOLA. Defendants ignore 12 United States Code section 1464(q)(4) which grants an express private right of action: "Nothing contained in this subsection shall be construed as affecting in any manner the right of the United States or any other party to bring an action under any other law of the United States or of any State, including any right which may exist in addition to specific statutory authority, challenging the legality of any act or practice which may be proscribed by this subsection. No regulation or order issued by the Board under this subsection shall in any manner constitute a defense to such action."

Defendants failed to raise this ground in their demurrer in the trial court. On appeal, defendants merely cite subsection (q) of section 1464 without

---

[2] 12 United States Code section 1464(q) provides in pertinent part: "(1) An association *shall not in any manner extend credit, lease, or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement—*

"(A) that the customer shall obtain additional credit, property, or service from such association, or from any service corporation or affiliate of such association, other than a loan, discount, deposit, or trust service;"

offering any case authority as to the meaning of the section. Clearly, subsection (q) expressly permits a private cause of action under HOLA or under any other law for tying practices proscribed by HOLA. (*Eureka Federal Sav. and Loan Ass'n* v. *Kidwell, supra,* 672 F.Supp. 436, 438.) We decline to determine whether the tying practice alleged by plaintiffs is proscribed by HOLA on the state of this record. We find no preempton by conflict between state and federal law.

Because we have determined plaintiffs' claims are not preempted by HOLA, we need not address plaintiffs' alternate argument that causes of action based upon acts of Citicorp's state chartered predecessor are not preempted by HOLA.

## B. *Exhaustion of Administrative Remedies*

The second ground upon which the trial court sustained the demurrers was that plaintiffs failed to exhaust their administrative remedies before the Board. Defendants cite *Mortensen* v. *First Federal Sav. and Loan Ass'n* (3d Cir. 1977) 549 F.2d 884, 898-900 and *Milberg* v. *Lawrence Cedarhurst Federal Sav. & L. Ass'n* (2d Cir. 1974) 496 F.2d 523, 524-525. *Mortensen* held the Board should construe its own regulation before a federal court proceeded with a federal antitrust action. *Milberg* found a private right of action which it ruled must be brought first before the Board. *Milberg,* however, was decided before the Supreme Court set forth a restrictive test to determine whether a private right of action could be implied for alleged violation of a federal statute in *Cort* v. *Ash* (1975) 422 U.S. 66 [45 L.Ed.2d 26, 95 S.Ct. 2080].

Before we reach the issue of exhaustion of administrative remedies, we must determine, therefore, whether plaintiffs have an implied private right of action under HOLA. Other than a brief comment by defendants that courts are split on this issue, neither party discusses whether there is an implied private right of action under HOLA after *Cort* v. *Ash*.[3] The Court of Appeals for the Eleventh Circuit has found no such implied private right exists. There, plaintiffs filed a class action alleging violation of the Board's regulations; the court also held that these allegations were governed by state rather than federal common law. (*Taylor* v. *Citizens Federal Sav. and Loan Ass'n* (11th Cir. 1988) 846 F.2d 1320, 1323-1324.) In *Eureka Federal Sav. and Loan Ass'n* v. *Kidwell, supra,* 672 F.Supp. 436, which held that under

---

[3] This is not the only deficiency we notice in the parties' appellate briefs. Both parties merely repeat their trial court briefs. The appellate briefs fail to discuss more recent United States Supreme Court cases, as well as circuit and district court cases, dealing with the issues presented.

the *Cort* test there is no implied private cause of action under HOLA, the district court also held the association's claims against its former officers, directors and employees alleging violations of prudent lending practices were governed by federal common law but that state claims for negligence and waste were governed by state law.

Under *Cort* and its progeny, the focus of the analysis is whether Congress intended to create a private right of action. The enforcement of HOLA rests almost entirely with the Board. (See 12 U.S.C. § 1464(d).) HOLA contains only two express provisions for a private right of action: (1) an officer or director of an association or the association itself may sue the Board; and (2) in 1982, Congress amended section 1464 to add subsection "(q)" which expressly provides for a private civil remedy for certain unfair credit practices. There is no indication that Congress intended to provide any other private remedies under HOLA. We assume Congress has provided the remedies it considered appropriate and we will not imply additional remedies absent strong evidence of a contrary intent. (*Eureka Federal Sav. and Loan Ass'n* v. *Kidwell, supra,* 672 F.Supp. 436, 437-439.) We hold plaintiffs do not have an implied private right of action under HOLA or under federal common law based on the allegations of the second amended complaint. Plaintiffs, therefore had no administrative remedy which they could have pursued.

After the trial court sustained defendants' demurrer without leave to amend, plaintiffs filed a motion to reconsider and a motion to vacate the judgment on the grounds a letter from the general counsel of the Board showed there was no administrative remedy available to plaintiffs. ■ Since we have determined plaintiffs have no private cause of action under HOLA except for those expressly provided in HOLA (12 U.S.C. § 1464(d)(1) and (q)), we need not address this issue except to say that plaintiffs erred in presenting evidence by affidavit in support of these motions and the trial court erred in considering the evidence. The appropriate method to show new facts on a motion to reconsider a ruling on a demurrer is to present a proposed amended complaint containing the new facts. (*Rains* v. *Superior Court* (1984) 150 Cal.App.3d 933, 943-944 [198 Cal.Rptr. 249]; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (TRG 1989) § 7:155.2 *et seq.* p. 7-40.)

## DISPOSITION

The judgment of dismissal is reversed and the matter is remanded to the trial court for further proceedings. Appellants are entitled to recover their costs on appeal.

Kline, P. J., and Peterson, J., concurred.