[No. A042990. First Dist., Div. Five. Jan. 9, 1990.]

GARRY EVANS et al., Plaintiffs and Appellants, v.
DON ECKELMAN et al., Defendants and Respondents.

---

**COUNSEL**

Jason M. Cox, Kerry M. Gough and Bonjour, Gough & Thorman for Plaintiffs and Appellants.

Peter T. Hoss, Michael P. Masuda and Noland, Hamerly, Etienne & Hoss for Defendants and Respondents.

---

**OPINION**

**LOW, P. J.**—A civil action based on a parent or parental figure's sexual abuse of the plaintiff as a child does not accrue until the plaintiff discovers or should discover the acts of molestation and the wrongfulness of the conduct.

Garry Evans, Terry Evans, and Lonnie Evans, three brothers, sued Don Eckelman, their uncle and former foster father, and OLCO, a corporation, for damages resulting from Eckelman's sexual abuse of them as children. The trial court sustained defendants' demurrers to the second amended complaint without leave to amend, and dismissed the action, on the ground it was barred by the statute of limitations. (Code Civ. Proc., § 340.1, subd. (a).) We reverse with directions that leave to amend be granted.

 In reviewing a general demurrer, we accept as true all the properly pleaded allegations of the complaint and examine them only for their legal sufficiency. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) The denial of leave to amend is an abuse of discretion if the record discloses a reasonable possibility that the plaintiff could amend to state a cause of action. (*Ibid.*) Applying those standards we find that the allegations of the complaint are insufficient on their face to overcome the statute of limitations, but it is reasonably possible plaintiff could do so on amendment of the complaint.

The alleged sexual abuse began in 1966 when Garry and Terry were seven years old and Lonnie was ten years old. Juvenile authorities had removed plaintiffs from the custody of their father and placed them in the home of their uncle by marriage, defendant Eckelman, and his spouse. The

Eckelmans were appointed foster parents and awarded custody and control of the children. From 1966 until 1968, when plaintiffs were removed from the Eckelman home, it is alleged Mr. Eckelman repeatedly molested each of them; specific acts alleged include genital fondling, anal and oral intercourse. The acts were accomplished against plaintiffs' will and without their consent. Eckelman concealed his conduct from other adults, instructed the boys not to tell anyone and threatened to return them to the county juvenile shelter if they did so.

As a result of the abuse, the secrecy, and the violation of their trust, plaintiffs developed various "psychological blocking mechanisms," including "fear, internalized shame, guilt and self blame, confusion, denial, repression and disassociation from the experience of abuse." They were consequently unable to perceive the psychological injuries caused them or their causal connection to Eckelman's acts. Plaintiffs' psychological blocks began to break down in 1986. Garry was convicted of sexual assault on a child and was ordered to undergo therapy. As a result of the therapy and subsequent discussion among the three brothers, all three discovered "for the first time . . . the nature of their injuries herein alleged and their causal connection to defendant's acts."

The causes of action alleged against Eckelman are entitled incestuous abuse, assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence per se, negligence, and breach of fiduciary duty. Plaintiffs filed this action in 1987. The longest applicable limitations period for sexual molestation of a minor by a family or household member is three years from the act. (Code Civ. Proc., § 340.1, subd. (a).) Although the statutory period was tolled during plaintiffs' minority (Code Civ. Proc., § 352, subd. (a)), that tolling period ended in 1974 as to Lonnie and in 1977 as to Garry and Terry.

I

Plaintiffs rely on the rule delaying accrual until the plaintiff has discovered or should have discovered the facts establishing the essential elements of his or her cause of action. That principle originated in cases of medical malpractice (*Huysman* v. *Kirsch* (1936) 6 Cal.2d 302, 306-313 [57 P.2d 908]), and progressive occupational illness (*Marsh* v. *Industrial Acc. Com.* (1933) 217 Cal. 338, 351 [18 P.2d 933, 86 A.L.R. 563]), but California courts have since recognized its application to other tort actions. These have included attorney malpractice (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 190 [98 Cal.Rptr. 837, 491 P.2d 421]), liability for defective drugs (*Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109 [245 Cal.Rptr. 658, 751 P.2d 923]), invasion of privacy (*Cain* v. *State*

*Farm Mut. Auto. Ins. Co.* (1976) 62 Cal.App.3d 310, 315 [132 Cal.Rptr. 860]), libel (*Manguso* v. *Oceanside Unified School Dist.* (1979) 88 Cal.App.3d 725, 731 [152 Cal.Rptr. 27]), and underground trespass (*Oakes* v. *McCarthy Co.* (1968) 267 Cal.App.2d 231, 255 [73 Cal.Rptr. 127]). The rule has been applied as well in certain cases arising from contract, such as breaches committed in secret and without immediately discoverable harm (*April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 832 [195 Cal.Rptr. 421]), negligent breach of contract to ship personal goods (*Allred* v. *Bekins Wide World Van Services* (1975) 45 Cal.App.3d 984, 991 [120 Cal.Rptr. 312]), and negligent breach of contract to conduct termite inspection (*Seelenfreund* v. *Terminix of Northern Cal., Inc.* (1978) 84 Cal.App.3d 133, 136-139 [148 Cal.Rptr. 307]).

In two cases alleging sexual abuse by a parent or authority figure, *DeRose* v. *Carswell* (1987) 196 Cal.App.3d 1011 [242 Cal.Rptr. 368], and *Snyder* v. *Boy Scouts of America, Inc.* (1988) 205 Cal.App.3d 1318 [253 Cal.Rptr. 156], the courts concluded the delayed accrual rule was inapplicable on the facts of those particular cases. The Supreme Court also declined to reach the general question in *John R.* v. *Oakland Unified School Dist.* (1989) 48 Cal.3d 438 [256 Cal.Rptr. 766, 769 P.2d 948], instead remanding for a determination of whether a teacher's threats of retaliation had estopped the school district from asserting plaintiff had not filed a timely claim notice. (*Id.*, at pp. 444-445.) One dissenting opinion suggested that delayed discovery should not be extended to molestation cases. (*Id.,* at pp. 460-462 (conc. and dis. opn. of Eagleson, J.).)

Nor does any statute either mandate or prohibit application of the discovery rule. Code of Civil Procedure section 340.1, which establishes a three-year limitations period for sexual abuse of a child by a family or household member, provides in subdivision (d): "Nothing in this bill is intended to preclude the courts from applying delayed discovery exceptions to the accrual of a cause of action for sexual molestation of a minor." The Legislature thus has disavowed any intent to interfere with the judicial determination of whether the delayed discovery rule should apply.

Two common themes run through the cases applying the discovery rule of accrual. First, the rule is applied to types of actions in which it will generally be difficult for plaintiffs to immediately detect or comprehend the breach or the resulting injuries. In some instances the cause or injuries are actually hidden, as in the case of a subterranean trespass (*Oakes* v. *McCarthy Co., supra*, 267 Cal.App.2d at p. 255), the erasure of video tapes held in the sole custody of the defendant (*April Enterprises, Inc.* v. *KTTV, supra,* 147 Cal.App.3d at p. 832), or foreign objects left in a patient's body after surgery (see, e.g., *Ashworth* v. *Memorial Hospital* (1988) 206 Cal.App.3d

1046, 1054-1062 [254 Cal.Rptr. 104]). Even when the breach and damage are not physically hidden, they may be beyond what the plaintiff could reasonably be expected to comprehend. An action for professional malpractice, for example, typically involves the professional's failure to apply his or her specialized skills and knowledge. "Corollary to this expertise is the inability of the layman to detect its misapplication; the client may not recognize the negligence of the professional when he sees it." (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra*, 6 Cal.3d at p. 188.) The same rationale has been adopted where defendant held itself out or was required by law to be specially qualified in a trade. (*Allred* v. *Bekins Wide World Van Services, supra*, 45 Cal.App.3d at pp. 990-991; *Seelenfreund* v. *Terminix of Northern Cal., Inc., supra*, 84 Cal.App.3d at pp. 137-138.)

Second, courts have relied on the nature of the relationship between defendant and plaintiff to explain application of the delayed accrual rule. The rule is generally applicable to confidential or fiduciary relationships. (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 598 [83 Cal.Rptr. 418, 463 P.2d 770]; see also *April Enterprises, Inc.* v. *KTTV, supra*, 147 Cal.App.3d at p. 827.) The fiduciary relationship carries a duty of full disclosure, and application of the discovery rule "prevents the fiduciary from obtaining immunity for an initial breach of duty by a subsequent breach of the obligation of disclosure." *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra*, 6 Cal.3d at p. 189.)

The court in *April Enterprises, Inc.* v. *KTTV, supra,* also noted the importance of the relationship between defendant and plaintiff: "In most instances, in fact, the defendant has been in a far superior position to comprehend the act and the injury. And in many, the defendant had reason to believe the plaintiff remained ignorant he had been wronged. Thus, there is an underlying notion that plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed. And often this is accompanied by the corollary notion that defendants should not be allowed to knowingly profit from their injuree's ignorance." (147 Cal.App.3d at p. 831.)

It has been widely recognized that the shock and confusion engendered by parental molestation, together with the parent's demands for secrecy, may lead a child to deny or block the traumatic events from conscious memory, or to turn the anger and pain inward so that the child blames himself or herself for the events. (See Comment, *Adult Incest Survivors and the Statute of Limitations: The Delayed Discovery Rule and Long-Term Damages* (1985) 25 Santa Clara L.Rev. 191, 192-195 [hereafter *Adult Incest Survivors*]; *Tyson* v. *Tyson* (1986) 107 Wn.2d 72 [727 P.2d 226, 234-235] (dis. opn. of Pearson, J.); cf. *People* v. *Bowker* (1988) 203 Cal.App.3d 385,

393-394 [249 Cal.Rptr. 886] [expert testimony on "accommodation" patterns by molestation victims may be admitted in criminal case to dispel myths and misconceptions, for example, to explain delayed revelation or recantations].) Even where memory of the events themselves is not suppressed, it may be some time before the victim can face the full impact of the acts. (See *Adult Incest Survivors, supra,* at p. 194; *Tyson* v. *Tyson, supra,* at p. 235.) ■■ The parent-child relationship is a confidential one (*Menick* v. *Goldy* (1955) 131 Cal.App.2d 542, 547 [280 P.2d 844]), placing special duties on the parent for the protection of the child's health and well-being, as well as special rights of custody and control. Stepparents, foster parents, and others in positions of parental authority enjoy similar rights over the child. (See, e.g., Health & Saf. Code, § 1530.6.)

As a practical matter a young child has little choice but to repose his or her trust with a parent or parental figure. When such a person abuses that trust, he commits two wrongs, the first by sexually abusing the child, the second by using the child's dependency and innocence to prevent recognition or revelation of the abuse. This may be accomplished by enforcing secrecy around the acts or even by teaching the child that the sexual acts are normal or necessary to the relationship. As in the professional negligence cases, application of the delayed discovery rule would serve to prevent the molester from using the child's ignorance and trust to conceal the primary tort. (See *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d at pp. 188-189.)

Because of the youth and ignorance of the victims, as well as the unique duties and authority held by the parent, child sexual abuse by a parent or parental figure may in some cases be as effectively concealed from the victim as an underground trespass, a foreign object left in the body after surgery, or the abstruse errors made by a hired professional. ■■ The plaintiff must plead facts showing the time and manner of the delayed discovery (*County of Alameda* v. *Superior Court* (1987) 195 Cal.App.3d 1283, 1286 [241 Cal.Rptr. 312]), and if he or she can do so it would be unjust and inconsistent with previous cases to not apply the discovery rule.

Defendants, citing the Washington Supreme Court case, *Tyson* v. *Tyson, supra,* 727 P.2d 226, argue that application of the discovery rule to molestation cases is unwise in light of the lack of enduring physical evidence in such cases and the frequent reliance on expert psychiatric testimony to prove damages. In declining to apply the discovery rule where the plaintiff alleged she had suppressed all memories of the molestation for many years, the *Tyson* majority reasoned that the lack of "objective, verifiable evidence," and the necessary reliance on fallible memories and dubious expert testimony, unacceptably increased the risk of spurious claims. (*Id.,* at pp. 228-

230.)[1] It is neither necessary nor justifiable to bar an entire category of actions merely because the emotional nature of the injury may allow some spurious claims to proceed further than would otherwise be possible. (*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 927-930 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518].) The extent of damage is a question for the trier of fact to determine, perhaps with the aid of expert testimony. (*Id.,* at p. 930.) Moreover, an action involving molestation of a young child need not be brought before the plaintiff's 21st birthday. To the extent that memories will be dimmed or distorted, those events will generally have occurred by the time the plaintiff reaches the age of 21.

We conclude that the purposes of the statute of limitations and the rationale of the delayed discovery rule as it has developed in our courts require that accrual of a cause of action for child sexual abuse by a parent or similar figure of authority be delayed until the plaintiff knows or reasonably should know of the cause of action. ■ " ' " '[The limitations period] is intended to run against those who are neglectful of their rights and who fail to use reasonable and proper diligence in the enforcement thereof. . . .' " It is not the policy of the law to unjustly deprive one of his remedy. . . .' " (*Manguso* v. *Oceanside Unified School Dist., supra,* 88 Cal.App.3d at p. 730.)

## II

It remains to be considered whether the allegations of this complaint are sufficient to invoke the delayed discovery rule. Plaintiffs argue they have alleged blocking mechanisms which prevented them from knowing the wrongfulness of the acts done to them and the extent of the psychological

---

[1] Courts of other jurisdictions have been divided in their treatment of the delayed discovery question when applied to molestation cases. As noted, in *Tyson* the Washington Supreme Court held the rule inapplicable even when the plaintiff had suppressed memory of the events themselves. In a more limited holding the Montana Supreme Court held delayed discovery did *not* apply where the plaintiff had been aware of and remembered the molestations but had not known the extent of the resulting injury. (*E. W.* v. *D.C.H.* (1988) 231 Mont. 481 [754 P.2d 817, 820-821].) A Wisconsin Appellate Court *applied* the delayed accrual rule where the plaintiff was aware of the abuse but did not until later discover the extent and cause of her psychological injuries. (*Hammer* v. *Hammer* (1987) 142 Wis.2d 257 [418 N.W.2d 23, 26-27], review den. 144 Wis.2d 953 [428 N.W.2d 552].) A federal court applying Illinois law held the doctrine applicable where the events themselves have been repressed. (*Johnson* v. *Johnson* (N.D.Ill. 1988) 701 F.Supp. 1363, 1367-1370; see also *Simmons* v. *United States* (9th Cir. 1986) 805 F.2d 1363, 1367-1368 [applying rule to psychiatric patient's delayed discovery of injuries from counselor's sexual relations with her].) The Louisiana cases defendants cite demonstrate that state's general acceptance of an accrual-on-discovery rule, as well as the equitable doctrine of *contra non valentum agere nulla currit praescriptio,* "prescription does not run against one unable to act." (*Bock* v. *Harmon* (La.Ct.App. 1988) 526 So.2d 292, 294.) The courts found those doctrines inapplicable on the facts of two particular molestation cases. (*Id.,* at pp. 296-297; *Doe* v. *Ainsworth* (La.Ct.App. 1989) 540 So.2d 425, 427-428.)

damage caused. Defendants argue neither of these allegations is sufficient under the California case of *DeRose* v. *Carswell, supra,* 196 Cal.App.3d 1011. The parties also disagree as to whether *DeRose* is correctly decided and whether it is distinguishable from the case at bar. The plaintiff in *DeRose* alleged that as a child she had been repeatedly molested by her stepgrandfather. Like the plaintiffs here, she did not bring her action until several years after she reached majority. (*Id.,* at p. 1015.) As in the present case, she alleged that the molestation had created " 'psychological mechanisms' " which in turn prevented her from " 'knowing . . . the nature or extent of her injuries . . . and the causal relationship between her present injuries and defendant's past acts.' " (*Id.,* at p. 1018.) The defendant's demurrer was sustained on statute of limitations grounds, and the appellate court affirmed.

The *DeRose* court rejected the plaintiff's delayed discovery claim. The court reasoned that an assault, which by definition is unconsented to and offensive, causes immediate harm as a matter of law, and provides an immediate right to sue. (196 Cal.App.3d at pp. 1017-1018, citing *Sonbergh* v. *MacQuarrie* (1952) 112 Cal.App.2d 771, 773-774 [247 P.2d 133].) The plaintiff conceded she had not suppressed all awareness of the sexual acts themselves, and had alleged the acts were perpetrated against her will. Thus she was plainly aware she had been assaulted, and her cause of action therefore accrued at the time of the acts. (196 Cal.App.3d at p. 1018.) Her allegations that until she underwent therapy she was unaware of the extent of the psychological injuries did not bring the discovery rule into play, because under *Davies* v. *Krasna* (1975) 14 Cal.3d 502, 514 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807], the infliction of " 'appreciable and actual harm, however uncertain in amount,' " commences the limitation period. The *DeRose* court concluded that the plaintiff, molested against her will and in fear of defendant, was aware at the time she had suffered substantial harm. (*DeRose, supra,* 196 Cal.App.3d at pp. 1022-1023.)

The *DeRose* court did not discuss the contention made here, that plaintiffs were unaware of the wrongfulness of defendant's acts. Awareness of wrongdoing is a prerequisite to accrual of the action under the delayed discovery rule. Our Supreme Court recently reaffirmed that principle in a unanimous opinion. While rejecting the stronger claim that accrual was delayed until the plaintiff was aware of all the *facts* constituting defendant's negligence or other wrongfulness, the court reasserted that knowledge of the act and injury is not in itself sufficient to start the limitations period: "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." (*Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d at p. 1110, fn. omitted.)

■ Plaintiffs here alleged that among the "blocking mechanisms" caused by the abuse were "internalized shame, guilt and self blame." Construed liberally these allegations might show plaintiffs' unawareness *at the time of the abuse* that defendant was acting wrongfully. But they do not indicate how long that ignorance of wrongfulness continued. For plaintiffs to prevail they must be able to show they remained unaware of, and had no reason to suspect, the wrongfulness of the conduct until a time less than three years before this action was filed. The complaint as it currently stands does not so allege.

We cannot, however, state as a matter of law that it is psychologically impossible for plaintiffs to have lived in such continuing ignorance that what happened to them was wrong. Plaintiffs have consistently maintained, in the trial court and here, that they were ignorant of the wrongfulness, and nothing in the complaint contradicts that claim. Given the unsettled state of the law in this area, plaintiffs should be allowed an opportunity to plead and prove their claim of delayed discovery of wrongfulness.

■ Defendants argue that plaintiffs, by alleging the abuse was accomplished against their will, without their consent, and by means of threats, have conceded they were aware the acts were wrongful. But parents, and others acting in their place, often demand that children do acts against their will and without their consent. Society does not regard such assertions of parental authority as wrong, even when accomplished by threat of discipline. "[A] parent may spank a child who has misbehaved without being liable for battery, or he may temporarily order the child to stay in his room as punishment, yet not be held responsible for false imprisonment." (*Gibson v. Gibson* (1971) 3 Cal.3d 914, 921 [92 Cal.Rptr. 288, 479 P.2d 648].) Children often have grievances against their parents. To demand that a young child assume the wrongfulness of any parental order, and hold himself in readiness to sue upon majority, would be unreasonable. By law and for sound social policies the child must place his trust in the parent and submit to parental authority.

Although the allegations of the complaint as it stands are insufficient to invoke the delayed discovery rule, there is a reasonable possibility plaintiffs can amend to allege an unawareness, lasting into adulthood, that the acts done to them were wrongful. In addition, the complaint does not preclude amendment to allege that plaintiffs had repressed, into adulthood, memory of the events themselves; such repression would also be sufficient to invoke the discovery rule.

### III

Because we hold that leave to amend should have been granted, the judgment must be reversed. For the guidance of court and counsel on

remand we address the question whether plaintiffs' alleged belated discovery of the extent of their psychological injuries would also delay accrual.

■ The extent of damage is not an element of a cause of action in tort, and the general rule is that the cause of action is complete on the sustaining of "actual and appreciable harm," on which the recoverable damages would be more than nominal. (*Davies* v. *Krasna, supra*, 14 Cal.3d at p. 514.) We agree with the court in *DeRose* v. *Carswell, supra*, 196 Cal.App.3d at pages 1022-1023, that a young child sexually molested against his or her will suffers an actual and appreciable injury at the time, and would be entitled to more than nominal damages. Unless awareness of the acts is immediately suppressed the plaintiff would necessarily be aware of the injury, and the hidden nature of the full damage would not bring the delayed accrual rule into play.

Plaintiffs urge us to follow *Martinez-Ferrer* v. *Richardson-Merrell, Inc.* (1980) 105 Cal.App.3d 316 [164 Cal.Rptr. 591], and find an exception to the *Davies* rule. *Martinez-Ferrer,* which involved latent injuries from a defective drug, was decided solely on its facts and without formulation of a broad rule. "We make no attempt to even summarize where all this may lead." (*Id.,* at p. 327.) The present case is factually dissimilar and *Martinez-Ferrer* is therefore inapposite. We conclude that, where the plaintiff does not allege ignorance or suppression of the sexual abuse itself, his lack of awareness of the full extent of injury from such abuse does not delay accrual of the cause of action.

The order sustaining defendants' demurrers without leave to amend and the subsequent order of dismissal are reversed. The superior court shall sustain the demurrers with leave to amend.

King, J., and Haning, J., concurred.