[No. G021015. Fourth Dist., Div. Three. Sept. 29, 1998.]

PRUDENTIAL HOME MORTGAGE COMPANY, INC., et al.,
Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
JOE DIAZ et al., Real Parties in Interest.

[No. G021016. Fourth Dist., Div. Three. Sept. 29, 1998.]

CENTERBANK MORTGAGE COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
JOE DIAZ et al., Real Parties in Interest.

[No. G021066. Fourth Dist., Div. Three. Sept. 29, 1998.]

GUILD MORTGAGE COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent.
JOE DIAZ et al., Real Parties in Interest.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

**COUNSEL**

Severson & Werson, Jan T. Chilton, Lewis, D'Amato, Brisbois & Bisgaard, Randall L. Mason, Alan E. Greenberg and Ernest Slome for Petitioners.

Adleson, Hess & Kelly, Phillip M. Adleson, Steven B. Haley and Duane W. Shewaga as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Baum, Hedlund, Aristei, Guilford & Downey, Paul J. Hedlund, Karen A. Barth, Pine & Pine and Norman Pine for Real Parties in Interest.

## OPINION

**WALLIN, J.**—Petitioners Prudential Home Mortgage Company, Inc., Centerbank Mortgage Company and Guild Mortgage Company are all real estate lenders, and each is a defendant in one of three potential class actions by former borrowers. The borrowers claim petitioners violated Civil Code section 2941, which regulates the process for recording a reconveyance of a deed of trust after a borrower pays off a secured loan. For these alleged violations, the borrowers seek to recover the $300 statutory forfeiture for each loan, all of which were repaid more than one year but less than three years before these actions were filed.

Petitioners challenged the pleadings below by demurrers and motions to strike, claiming the recovery of the statutory forfeiture is barred by the one-year statute of limitations. (Code Civ. Proc., § 340, subd. (1).) At a joint hearing on all three cases, the trial court disagreed. Relying on *MacManus* v. *A. E. Realty Partners* (1983) 146 Cal.App.3d 275 [194 Cal.Rptr. 567], it ruled that Civil Code section 2941 is remedial, rather than penal, and therefore the three-year statute of limitations applies. (Code Civ. Proc., § 338, subd. (a).) Petitioners seek extraordinary relief from these orders, urging us to find the one-year statute applies to the forfeiture as a matter of law.

In the cases filed against Prudential and Centerbank, the borrowers also request equitable relief under Business and Professions Code section 17200 et seq., requiring those petitioners to record a deed of reconveyance on each repaid, but as yet unreconveyed, deed of trust. The trial court denied the motions to strike the requests for equitable relief by Prudential and Centerbank; they challenge these orders, claiming the legal remedies provided in Civil Code section 2941 are adequate and equitable relief is unnecessary.

These petitions present a statute of limitations issue which is critical to as many as 50 cases pending around the state. Trial courts have issued contradictory rulings, and rulings by the judges of the Orange County Superior Court are inconsistent. Petitioners filed their writs in this court in January 1997. We invited informal responses and subsequently denied the writs. The

Supreme Court granted review in all three cases and transferred them to us with instructions to set an order to show cause hearing.

After briefing and argument, we find the one-year statute of limitations applies to the claims for the statutory forfeiture under Civil Code section 2941 and that the statutory remedies preclude additional equitable relief. We publish this opinion with the exception of part I, which deals with requests for judicial notice and related matters.

I.   *Motions During the Course of These Writ Proceedings.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.   *Statute of Limitations*

Civil Code section 2941 establishes the respective duties of the beneficiary and trustee with respect to the reconveyance of a deed of trust after the secured obligation is satisfied. Subdivision (b)(1) requires the beneficiary, upon payoff, to "execute and deliver to the trustee the original note, deed of trust, request for a full reconveyance . . . ." The trustee then executes and records the full reconveyance within 21 days of receipt of the documents from the beneficiary, delivers a copy of the reconveyance to the beneficiary and, upon request, delivers the original note and deed of trust to the trustor. (Civ. Code, § 2941, subd. (b)(1)(A)-(C).)

In case the former procedure is not followed by either the trustee or the beneficiary, the statute provides two backup methods to assure the trustor can promptly clear title to the secured property. First, upon request by the trustor, the beneficiary must substitute itself in as trustee and execute a full reconveyance. (Civ. Code, § 2941, subd. (b)(2).) Second, if neither the trustee nor the beneficiary has executed the full reconveyance within 75 calendar days after the loan payoff, "a title insurance company may prepare and record a release of the obligation" after giving notice of its intent to do so to the trustor, trustee, and beneficiary. "The release issued pursuant to this subdivision shall be entitled to recordation and, when recorded, shall be deemed to be the equivalent of a reconveyance of a deed of trust." (Civ. Code, § 2941, subd. (b)(3)(B).)

The crucial statute here is subdivision (d) of Civil Code section 2941, which provides: "The violation of this section shall make the violator liable to the person affected by the violation for all damages which that person may

*See footnote, *ante*, page 1236.

sustain by reason of the violation, and shall require that the violator forfeit to that person the sum of three hundred dollars ($300)." Petitioners claim this is an action for a statutory penalty or forfeiture, which is clearly governed by Code of Civil Procedure section 340, subdivision (1).[1] We agree.

The language of Civil Code section 2941 itself and the cases construing it uniformly characterize the $300 sum as a penalty or forfeiture. Subdivision (d) compels a statutory violator to "forfeit" the sum to the affected person, in addition to actual damages. The legislative history of the statute consistently refers to the sum imposed as a forfeiture or civil penalty. And in *Dixon* v. *Grossman* (1972) 22 Cal.App.3d 941 [99 Cal.Rptr. 659], the court stated, "The obvious statutory purpose [of the $300 sum] is to encourage prompt reconveyance by penalizing unwarranted delay. It imposes a statutory penalty [citation] which may properly be fixed without reference to the actual damages sustained [citation]." (*Id.* at p. 944; accord, *Trustors Security Service* v. *Title Recon Tracking Service* (1996) 49 Cal.App.4th 592, 602-603 [56 Cal.Rptr.2d 793]; *Pintor* v. *Ong* (1989) 211 Cal.App.3d 837, 844 [259 Cal.Rptr. 577]; *Drewry* v. *Welch* (1965) 236 Cal.App.2d 159, 174 [46 Cal.Rptr. 65].)

Case law has consistently applied the one-year limitations period to statutes that provide for recovery of actual damages and a mandatory additional penalty. The seminal case is *County of Los Angeles* v. *Ballerino* (1893) 99 Cal. 593, in which the Supreme Court stated, "The statutory penalty there referred to [in Code of Civil Procedure section, 340, subdivision (1)] is one which an individual is allowed to recover against a wrongdoer, as a satisfaction for the wrong or injury suffered, and without reference to the actual damage sustained, or one which is given to the individual and the state as a punishment for some act which is in the nature of a public wrong. The action to recover such a penalty is a penal action, founded upon a statute, and is the action which, under section 340 of the Code of Civil Procedure, must be brought within one year." (*Id.* at p. 596; accord, *County of San Diego* v. *Milotz* (1956) 46 Cal.2d 761 [300 P.2d 1]; *Hansen* v. *Vallejo Electric Light etc. Co.* (1920) 182 Cal. 492 [188 P. 999].) Although there is no recent Supreme Court case reiterating the rule, the Courts of Appeal have consistently done so. "[T]he settled rule in California is that statutes which provide for recovery of damages additional to actual losses incurred, such as double or treble damages, are considered penal in nature [citations], and thus governed by the one-year period of limitations stated in section 340, subdivision (1)." (*G.H.I.I.* v. *MTS, Inc.* (1983) 147 Cal.App.3d 256, 277 [195

---

[1]Code of Civil Procedure section 340, subdivision (1) provides that "[a]n action upon a statute for a penalty or forfeiture, when the action is given to an individual, or to an individual and the state, . . ." shall be brought within one year.

Cal.Rptr. 211, 41 A.L.R.4th 653]; accord, *Sylve* v. *Riley* (1993) 15 Cal.App.4th 23, 26 [18 Cal.Rptr.2d 608]; *Menefee* v. *Ostawari* (1991) 228 Cal.App.3d 239, 243-245 [278 Cal.Rptr. 805]; *Community Cause* v. *Boatwright* (1981) 124 Cal.App.3d 888, 897 [177 Cal.Rptr. 657]; and see *Ashland Oil Co. of Cal.* v. *Union Oil Co. of Cal.* (9th Cir. 1977) 567 F.2d 984, 991.)

Petitioners contend that *MacManus* v. *A. E. Realty Partners, supra,* 146 Cal.App.3d 275, on which the trial court relied, is the "sole exception to the otherwise unanimous line of authority interpreting Code of Civil Procedure section 340(1)" and was wrongly decided. Because the case was decided by this court, they urge us to reconsider and reject its "divergent limitations test."

In *MacManus,* plaintiffs alleged violations of Civil Code section 2995, which prohibits a real estate developer from requiring the provision of escrow services by an entity in which the developer has a financial interest. Section 2995 states a violator "shall be liable to the purchaser . . . in the amount of three times the amount charged for the escrow services, but in no event less than two hundred fifty dollars ($250), plus reasonable attorney's fees and costs." In determining the statute was governed by the three-year statute of limitations, the court stated, "Our decision [regarding the applicable limitations period] must depend upon whether the statute is characterized as 'penal' or 'remedial.' [Citation.] The distinction is rarely clear cut, for the same provision may be penal to the offender and remedial to the victim." (146 Cal.App.3d at p. 283.)

The court proceeded to look at the legislative history of the statute and found it was enacted as a remedial statute to protect buyers. It further observed recovery under the statute was "remedial in nature" because the liability of the developer was not dependent on its culpability. (146 Cal.App.3d at p. 283.) Finally, it characterized the statutory damages as a "liquidated damage measure" which was "consistent with a remedial purpose." (*Id.* at p. 284.)

The *MacManus* court embarked on the wrong analytical path. Rather than adhering to the long-standing application of Code of Civil Procedure section 340, subdivision (1) to statutes awarding an arbitrary sum in addition to, and unrelated to, actual damages, the court borrowed the remedial versus penal test from *Huntington* v. *Attrill* (1892) 146 U.S. 657 [13 S.Ct. 224, 36 L.Ed. 1123]. In *Huntington,* the Supreme Court considered whether a New York statute imposing liability to corporate creditors on a corporate director was "penal," thus avoiding its enforcement in Maryland under the full faith and

credit clause of the United States Constitution. The court explained: "[T]he words 'penal' and 'penalty' have been used in various senses. Strictly and primarily, they denote punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offense against its laws. [Citation.] But they are also commonly used as including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered." (*Id.* at pp. 666-667 [13 S.Ct. at p. 227].) The court concluded the statute was remedial because it did "not . . . administer a punishment imposed upon an offender against the state, but simply . . . enforce[d] a private right secured under its laws to an individual." (*Id.* at pp. 676-677 [13 S.Ct. at p. 231].) It carefully distinguished, however, the use of the word "penal" for purposes of barring enforcement in a foreign state or country from its use in other contexts, citing, by way of example, a New York case that had previously held the same statute to be penal for purposes of a statute of limitations substantially similar to the one before us. "Within the meaning of a statute of limitations applicable to private actions only, the action against [a corporate] officer is not 'upon a liability created by statute, other than a penalty or forfeiture,' which would be barred in six years, but is barred in three years as 'an action upon a statute for a penalty or forfeiture where action is given to the party aggrieved,' because the provisions in question . . . 'impose a penalty, or a liability in that nature.' [Citation.]" (*Id.* at pp. 677-678 [13 S.Ct. at pp. 227-228].)

The two other cases cited by the *MacManus* court are likewise inapposite. In *Levy* v. *Superior Court* (1895) 105 Cal. 600 [38 P. 965], the question was whether a person who allegedly had embezzled property of a decedent could be compelled to appear and testify in the probate court, or whether he could assert the privilege against self-incrimination. In this context, the court concluded the statute was remedial rather than penal, because it was not designed to punish for a public wrong, but to allow the estate's administrator to recover estate property. And in *Riggs* v. *Government Emp. Financial Corp.* (9th Cir. 1980) 623 F.2d 68, the parties characterized the issue of whether a truth-in-lending claim survived the death of its original owner and was thus transferable to a bankruptcy trustee as dependent on whether the claim provision was penal or remedial. The court stated, "Our efforts to resolve this novel question have convinced us that [15 United States Code] section 1640 is neither wholly remedial nor wholly penal. We have reached the conclusion, as have other courts before us, that '[t]he use of labels such as "penal" or "remedial" is [only] a shorthand way of expressing relevant considerations,' [citation], and that an inquiry as to whether a statute 'is penal or remedial seems bound to result in the conclusion that . . . it is both.' [Citation.]" (*Id.* at p. 70.)

The borrowers here cite *Stone* v. *Travelers Corp.* (9th Cir. 1995) 58 F.3d 434 in support of the trial court's ruling. In *Stone,* the federal court held a provision under the Employee Retirement Income Security Act (ERISA), providing that an employee benefits plan participant could recover "up to $100 a day" from the plan administrator if it fails or refuses to comply with the participant's request for information, was not a penalty or forfeiture within the meaning of Code of Civil Procedure section 340, subdivision (1), but was instead "a remedy sought by an individual as compensation to address a private wrong. It follows that the three-year limitation of Cal. Code Civ. Proc. Code § 338(a) applies." (58 F.3d at p. 439.) The federal court relied on its earlier decision in *Rivera* v. *Anaya* (9th Cir. 1984) 726 F.2d 564, which dealt with a provision of the Federal Farm Labor Contractor Registration Act providing for recovery of "actual damages or statutory damages up to $500 per plaintiff for violations of the registration, disclosure, recordkeeping and posting requirements of the Act." The *Rivera* court held that the test under California law for whether a recovery was a penalty for limitations purposes was "whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual." (*Rivera* v. *Anaya, supra,* 726 F.2d at p. 567.) Inexplicably, it took this test directly from *Huntington* v. *Attrill, supra,* 146 U.S. 657, 668 [13 S.Ct. 224, 228], which, as we discussed above, dealt with the full faith and credit clause of the United States Constitution.

Equally puzzling, the *Stone* court expressly pointed out that the statutory damages in both the ERISA section and the statute in *Rivera* were not "calculated in any measurable way according to the loss actually suffered by the plaintiff." (*Stone* v. *Travelers Corp., supra,* 58 F.3d at p. 439.) The court dismissed this as insignificant: "It is true that there is one California case that held that a payment of a specified sum of liquidated damages was a penalty because 'the specified recovery is authorized without any reference to the question of actual damage.' *Hansen* v. *Vallejo Electric Light & Power,* 182 Cal. 492, 496, 188 P. 999 (1920). We discussed the *Hansen* case in *Rivera,* however, and held that '[t]o the extent that *Hansen* may not be consistent with the *Huntington* [private wrong] rule, it appears to have been superseded by later California case law.' [quoting *Rivera*]." (*Stone* v. *Travelers Corp., supra,* 58 F.3d at p. 439.) But *Hansen* has not been superseded by later law. As we noted above, *Hansen* is but one in a long line of California cases holding the one-year statute of limitations applies to recovery of statutory damages calculated without reference to actual harm.

We conclude the analysis of the *MacManus* court was analytically flawed and does not apply to the statute of limitations issue before us.

## III.  *Tolling of Statute of Limitations*

Petitioners refer to the borrowers' argument below that if the one-year statute of limitations applies, the accrual of their causes of action should be tolled under the doctrine of delayed discovery. The trial court did not rule on this question, having found the cases governed by the three-year statute of limitations. Petitioners claim the absence of a full reconveyance is a matter of public record and ask us to rule that the borrowers were thus on notice as a matter of law. We decline to do so.

The general rule is that a cause of action accrues when the wrongful act is done and not at the time of plaintiff's discovery. But under the delayed discovery rule, a cause of action will not accrue until the plaintiff discovers or should have discovered, through the exercise of reasonable diligence, all the facts essential to the cause of action. (*Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 407 [163 Cal.Rptr. 711].)

The application of the delayed discovery rule rests on considerations of policy. "Two common themes run through the cases applying the discovery rule of accrual. First, the rule is applied to types of actions in which it will generally be difficult for plaintiffs to immediately detect or comprehend the breach or the resulting injuries. In some instances, the cause or injuries are actually hidden . . . . Even when the breach and damage are not physically hidden, they may be beyond what the plaintiff could reasonably be expected to comprehend. An action for professional malpractice, for example, typically involves the professional's failure to apply his or her specialized skills and knowledge. . . . The same rationale has been adopted where defendant held itself out or was required by law to be specially qualified in a trade. [Citations.] [¶] Second, courts have relied on the nature of the relationship between defendant and plaintiff to explain application of the delayed accrual rule. The rule is generally applicable to confidential or fiduciary relationships." (*Evans* v. *Eckelman* (1990) 216 Cal.App.3d 1609, 1614-1615 [265 Cal.Rptr. 605]; see *Parsons* v. *Tickner* (1995) 31 Cal.App.4th 1513, 1526 [37 Cal.Rptr.2d 810].)

In *April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805 [195 Cal.Rptr. 421], the court applied the delayed discovery rule to a breach of contract action where the breach was committed "in secret" and the harm was not reasonably discoverable by plaintiffs at the time. The court reviewed the application of the rule in California and other states and concluded, "A common thread seems to run through all the types of actions where courts have applied the discovery rule. The injury or the act causing the injury, or

both, have been difficult for the plaintiff to detect. In most instances, in fact, the defendant has been in a far superior position to comprehend the act and the injury. And in many, the defendant had reason to believe the plaintiff remained ignorant he had been wronged. Thus, there is an underlying notion that plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed. And often this is accompanied by the corollary notion that defendants should not be allowed to knowingly profit from their injuree's ignorance." (*Id.* at p. 831.)

Petitioners correctly point out the doctrine of delayed discovery requires a plaintiff to plead facts showing an excuse for late discovery of the facts underlying his cause of action. He must show "that [he] was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry. [Citations.]" (*Community Cause* v. *Boatwright, supra,* 124 Cal.App.3d at p. 900.) ▮▮ Petitioners claim the borrowers cannot plead an excuse here because their failure to reconvey was a matter of public record and thus imparted presumptive knowledge of the breach of duty to the borrowers. But we have found no case suggesting the existence of public records precludes the application of the delayed discovery doctrine as a matter of law.

In *Community Cause* v. *Boatwright, supra,* 124 Cal.App.3d 888, the plaintiff was a nonprofit citizens' group that had filed an action against an assemblyman for allegedly failing to disclose his interest in a partnership as required by political disclosure statutes. The court held that the delayed discovery rule applied to the statute of limitations under Code of Civil Procedure section 340, subdivision (1), but the allegations of the complaint were insufficient to toll it because the disclosure documents were a matter of public record more than one year before the filing of the complaint. "When a plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books), the statute applicable to the cause of action commences to run. [Citation.] Here, although plaintiff alleges that it discovered the nondisclosure only six months before its complaint was filed in May 1978, it also alleges that the documents which led to the discovery became available as public records in 'late 1976 and continuing through 1977.' It alleges no facts to explain the gap between the date these documents first became available and the alleged date of discovery." (124 Cal.App.3d at p. 902, italics omitted.)

The facts here are easily distinguishable from *Community Cause*, where the basis for the plaintiffs' complaint was failure to disclose in accordance

with a disclosure statute. Here, the borrowers alleged they "reasonably relied upon defendants as professionals, and as agents and fiduciaries, to perform the services that they were professionally, contractually and statutorily required to perform." They "were not on notice of any facts or information that would have required them to inquire into whether defendants have fulfilled their duty to record timely reconveyances . . . ." Letters from title insurance companies informing plaintiffs of their intent to record releases of obligation "instructed borrowers not to investigate into whether their titles had been cleared, by advising the borrower that: 'You Need Not Take Any Action . . . , unless you have not paid this loan off.' " The borrowers did not actually discover the failure to reconvey until they were notified by letter shortly before the filing of the complaint.

While public records certainly impart presumptive notice under some circumstances, we decline to hold their mere existence imparts knowledge as a matter of law. The public policy that would support such a holding is not present here. On the contrary, the Legislature has firmly established the public policy that trustees must execute and record full reconveyances upon payment of loans, and has underscored it by providing for the $300 penalty in Civil Code section 2941, subdivision (d). Furthermore, the Legislature has provided that "[e]very person who willfully violates Section 2941 is guilty of a misdemeanor punishable by fine of not less than fifty dollars ($50) nor more than four hundred dollars ($400), or by imprisonment in the county jail for not to exceed six months, or by both such fine and imprisonment. [¶] For purposes of this section, 'willfully' means simply a purpose or willingness to commit the act, or make the omission referred to. It does not require an intent to violate the law, to injure another, or to acquire any advantage." (Civ. Code, § 2941.5.)

The borrowers here were entitled to expect petitioners would perform an act they were required to perform by statute and the omission of which is a crime. (Civ. Code, § 3548; *Estate of Neilson* (1962) 57 Cal.2d 733 [22 Cal.Rptr. 1, 371 P.2d 745] [It is presumed that a person obeys the law.].) Under these circumstances, they had no reason to check the public records to see if reconveyances had been made. " ' " '[W]here no duty is imposed by law upon a person to make inquiry, and where under the circumstances a prudent man would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery.' [Citations.]" ' " (*Watts* v. *Crocker-Citizens National Bank* (1982) 132 Cal.App.3d 516, 523 [183 Cal.Rptr. 304].)

We conclude the doctrine of delayed discovery applies to the accrual of the cause of action under Civil Code section 2941. The trial court must

consider the sufficiency of the pleading of delayed discovery in light of our ruling that the one-year statute of limitations applies and, if deemed necessary, allow the borrowers an opportunity to amend to allege additional facts.

## IV.  *Equitable Relief*

██  Petitioners Prudential Home Mortgage Company, Inc., and Centerbank Mortgage Company claim the trial court erred in failing to strike the borrowers' request for equitable relief under Business and Professions Code section 17200 et seq. Petitioners concede these sections allow courts to enjoin wrongful business practices in whatever context they occur (*People* v. *McKale* (1979) 25 Cal.3d 626 [159 Cal.Rptr. 811, 602 P.2d 731]), but argue the availability of the statutory relief is subject to fundamental equitable principles, including inadequacy of the legal remedy. Petitioners contend the legal remedies under Civil Code section 2941 are adequate because the relief sought, requiring petitioners to record full reconveyances and thus clear the borrowers' title, can be achieved by having a title insurance company record a release of obligation. (Civ. Code, § 2941, subd. (b)(3).)

The trial court relied on subdivision (b)(5) of Civil Code section 2941, which states: "Paragraphs (2) [requiring the lender to substitute itself as trustee to execute a full reconveyance] and (3) [allowing a title insurance company to record a release of obligation] do not excuse the beneficiary or the trustee from compliance with paragraph (1) [requiring the lender to reconvey the deed of trust upon satisfaction]. Paragraph (3) does not excuse the beneficiary from compliance with paragraph (2)."

The meaning of this subdivision was explained in *Trustors Security Service* v. *Title Recon Tracking Service, supra,* 49 Cal.App.4th 592: "The language the Legislature used in this subdivision reinforces the view the [1988] amendment [to the statute allowing title insurers to clear title] was intended to create a hierarchical system for issuing reconveyances which permits title insurers to use the substitute method of releases of obligation for clearing title only as a last resort. . . . [¶] . . . [¶] [T]he language of [Civil Code] section 2941, subdivision (b)(5) makes clear beneficiaries and trustees remain liable for failing to perform their statutory obligations even though a title insurer ultimately cleared title by releasing the obligation. . . . This provision, which continues to hold lenders/beneficiaries and trustees liable for nonperformance regardless of the circumstances which prevented performance, indicates the Legislature intended these parties to be primarily responsible for issuing reconveyances. Presumably trustees, and especially lenders/beneficiaries, expose themselves to the risk of at least

civil penalties and damages in the event a trustor suffers damages from, for example, lost opportunities during the 75-day period a title insurer holds the necessary documentation for reconveying before recording a release of obligation." (*Id.* at pp. 602-603.)

*Trustors Security Service* suggests that lenders remain liable for damages for noncompliance even though one of the backup methods of clearing title is used. Because the Legislature has prescribed these backup methods when a lender fails to execute a request for reconveyance under subdivision (b)(1) of Civil Code section 2941, we must assume the statutory remedies are adequate, thus precluding equitable relief under the Business and Professions Code.

The borrowers argue a release of obligation recorded by a title insurance company is not considered by knowledgeable persons within the industry as sufficient to clear title. They claim complete relief can only be had if petitioners are compelled to execute and record a full reconveyance.

Again, we resort to the language of the statute. Civil Code section 2941, subdivision (b)(3)(B) specifically states: "The release issued pursuant to this subdivision . . . , when recorded, shall be deemed to be the equivalent of a reconveyance of a deed of trust." This is a clear public policy determination by the Legislature that an expeditious means of clearing title will facilitate the orderly progression of commerce, i.e., the refinancing or sale of homes. We are not at liberty to disturb this determination.

### Disposition

Let a writ issue directing the superior court to vacate that portion of its December 13, 1996, order holding that Civil Code section 2941 is remedial and that the three-year statute of limitations applies. In No. G021015 and No. G021016, the superior court is also directed to strike the entire last sentence of paragraph 73 of the second amended complaint which seeks an order directing petitioners to execute and record reconveyances, and paragraph 5 of the prayer.

Sills, P. J., concurred.

**RYLAARSDAM, J.,** Concurring and Dissenting.—I concur in the majority opinion, except as to part III. These writ proceedings concern lawsuits against lenders who loaned the real parties money secured by deeds of trust on their real property. Real parties seek recovery of a statutory penalty under Civil Code section 2941 based on the lenders' alleged failure to record deeds

of reconveyance after the underlying debts were satisfied. In part II of the majority opinion, my colleagues hold that the one-year statute of limitations contained in Code of Civil Procedure section 340, subdivision (1) (all further statutory references are to the Code of Civil Procedure unless otherwise specified) applies to these actions. I agree with this conclusion. But in part III, the majority holds that under the rule of discovery, real parties may amend their complaints to allege facts which would support a delay in the accrual of their causes of action. I disagree with this conclusion. In my opinion real parties' actions are barred by the statute of limitations.

We start with the proposition that statutes of limitation are the prerogative of the Legislature. (*Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 615 [189 Cal.Rptr. 871, 659 P.2d 1160]; *Scheas* v. *Robertson* (1951) 38 Cal.2d 119, 125 [238 P.2d 982].) When interpreting them, courts are obligated to give effect to the plain meaning of statutory language. (*O'Neill* v. *Tichy* (1993) 19 Cal.App.4th 114, 120 [25 Cal.Rptr.2d 162].) Thus, as section 312 declares, "Civil actions, *without exception*, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute." (Italics added.)

Generally, a cause of action accrues when, under the substantive law, a party can prosecute a lawsuit for a wrongful act. (*Romano* v. *Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 487 [59 Cal.Rptr.2d 20, 926 P.2d 1114]; *Lee* v. *Bank of America* (1994) 27 Cal.App.4th 197, 205 [32 Cal.Rptr.2d 388]; 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 459, p. 580.) In *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421], the Supreme Court stated the statute of limitations ordinarily "begins to run upon the occurrence of the last element essential to the cause of action." (*Id.* at p. 187.)

There are three exceptions to this general rule: (1) The statute of limitations is tolled, generally because the plaintiff is under a disability; (2) the defendant is estopped from relying on the statute of limitations; and (3) the accrual of the cause of action is, for some reason, delayed beyond the occurrence of the last element essential to the cause of action. (3 Witkin, Cal. Procedure, *supra*, Actions, §§ 462, 633, 685, pp. 582-583, 812-813, 872-873.) Real parties do not contend that either of the first two exceptions applies here. Rather, they and the majority rely on the third exception: delayed accrual of their causes of action pursuant to the discovery rule. This rule postpones the accrual of a cause of action *under certain circumstances* until a plaintiff discovers, or through the exercise of reasonable diligence should have discovered, the facts giving rise to the cause of action.

Statutes provide for the discovery rule in connection with certain actions, such as fraud (§ 338, subd. (d)), attorney malpractice (§ 340.6), sexual abuse of a minor (§ 340.1), and medical malpractice (§ 340.5). In *Parsons* v. *Tickner* (1995) 31 Cal.App.4th 1513 [37 Cal.Rptr.2d 810], one of the cases relied upon by the majority, the court applied section 338, subdivision (d), where defendants fraudulently concealed the facts upon which the cause of action was based. (31 Cal.App.4th at pp. 1524-1527.)

Our Supreme Court has also applied the discovery rule in cases where a special relationship exists between the parties. (*Huysman* v. *Kirsch* (1936) 6 Cal.2d 302, 312 [57 P.2d 908].) In *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d 176, which preceded the adoption of section 340.6, the court applied it to legal malpractice actions, based on the nature of and the manner in which legal services are provided, the lay plaintiff's general inability to recognize malpractice by an attorney, and the fiduciary nature of the parties' relationship. (6 Cal.2d at pp. 188-189.) In support of its holding, *Neel* cited a line of cases applying the discovery rule to cases involving either malpractice committed by other professionals or the breach of a fiduciary duty. (*Id.* at pp. 186-187.)

Case law also justifies application of the discovery rule in certain pharmaceutical and product defect cases involving imperceptible injuries when the victim "as a reasonably prudent and intelligent person could not, without specialized knowledge, have been made aware of [the cause of injury]." (*Warrington* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 564, 570 [80 Cal.Rptr. 130]; also see *San Francisco Unified School Dist.* v. *W. R. Grace & Co.* (1995) 37 Cal.App.4th 1318 [44 Cal.Rptr.2d 305].) Intentional concealment by the defendant also justifies application of the discovery rule. (See *Bernson* v. *Browning-Ferris Industries* (1994) 7 Cal.4th 926 [30 Cal.Rptr.2d 440, 873 P.2d 613].) However, mere silence does not constitute concealment in the absence of a fiduciary or confidential relationship between the parties, or "unless some specially appearing circumstances are shown which of themselves equitably estop a person from relying on his silence or inaction, and which of themselves are sufficient to create on the part of the nonrevealor a positive duty to speak or act . . . ." (*Scafidi* v. *Western Loan & Bldg. Co.* (1946) 72 Cal.App.2d 550, 562 [165 P.2d 260].)

None of the circumstances justifying application of the judicially created exceptions to the general rule are present here. There is no special relationship, fiduciary or otherwise, between the petitioners and real parties. "The deed of trust constitutes a contract between the *trustor* and the *beneficiary*, with the trustee acting as agent for both and acting pursuant to the terms

of the instrument and their instructions." (*Hatch* v. *Collins* (1990) 225 Cal.App.3d 1104, 1111 [275 Cal.Rptr. 476]; see also *Siegel* v. *American Savings & Loan Assn.* (1989) 210 Cal.App.3d 953, 957 [258 Cal.Rptr. 746].) The trust deed does not create a fiduciary relationship between the trustor and the beneficiary. (*Lineker* v. *McColgan* (1921) 54 Cal.App. 771, 774 [202 P. 936].) Neither are any of the circumstances involved in the other judicially recognized justifications for the application of the discovery rule present here. Nevertheless, relying on *Evans* v. *Eckelman* (1990) 216 Cal.App.3d 1609 [265 Cal.Rptr. 605] and *April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805 [195 Cal.Rptr. 421], the majority concludes that the discovery rule may be invoked because plaintiffs encountered difficulty in unearthing facts constituting the cause of action. While these cases contain dictum which might support such a conclusion, in my opinion such dictum constitutes an incorrect statement of the law. Mere difficulty in ascertaining the facts constituting a cause of action does not justify application of the discovery rule, absent one of the circumstances discussed above.

*April Enterprises* involved a television program producer's action against a television station seeking damages for breach of the implied covenant of fair dealing and breach of fiduciary duty based on the station's erasing videotapes of a program assertedly in violation of plaintiff's syndication rights. The complaint alleged that plaintiff discovered the erasures in 1976. Defendant claimed the tapes had been erased in 1970 or 1972 and, in the trial court, successfully argued the action was barred by the statute of limitations. Citing the alleged fiduciary relationship between the parties, the Court of Appeal concluded that the discovery rule applied to both causes of action and reversed the judgment. (*April Enterprises, Inc.* v. *KTTV, supra,* 147 Cal.App.3d at pp. 827-828.)

Next, quite unnecessary to its holding, *April Enterprises* concluded ". . . the discovery rule has replaced the date-of-injury accrual rule in a growing number of actions in California." (*April Enterprises, Inc.* v. *KTTV, supra,* 147 Cal.App.3d at p. 828.) After citing a number of cases involving professional malpractice, latent defects in real estate development projects, the negligent manufacture of drugs which the defendant represented to be safe and other actions where the defendant allegedly concealed its tortious conduct (*id.* at pp. 828-831), *April Enterprises* concluded "[a] common thread" running "through . . . the types of actions where courts have applied the discovery rule," is that "[t]he injury or the act causing the injury . . . ha[s] been difficult for the plaintiff to detect." (*Id.* at p. 831.)

The cases cited by *April Enterprises* do not support the broad general rule enunciated by it. Each of them involved situations where either the plaintiff

relied on a defendant's professional expertise, or the defendant in some manner concealed material facts from the plaintiff. Subsequent decisions purportedly following *April Enterprises* have also involved either fiduciary relationships, active concealment of material facts, or specific statutory exceptions. (See, e.g., *Cross* v. *Bonded Adjustment Bureau* (1996) 48 Cal.App.4th 266, 281 [55 Cal.Rptr.2d 801] [fiduciary relationship, misrepresentation]; *Naftzger* v. *American Numismatic Society* (1996) 42 Cal.App.4th 421, 428, 435 [49 Cal.Rptr.2d 784] [special statute relating to the recovery of stolen property]; *Lee* v. *Escrow Consultants, Inc.* (1989) 210 Cal.App.3d 915, 922 [259 Cal.Rptr. 117] [fiduciary relationship, misrepresentation].)

*Evans* v. *Eckelman, supra,* 216 Cal.App.3d 1609 does not support the majority either. That decision relied on *April Enterprises, Inc.* v. *KTTV, supra,* 147 Cal.App.3d 805 to reverse the dismissal of an action for childhood sexual abuse brought by adult nephews against an uncle who temporarily had custody of them while they were minors. At the time, section 340.1 required the action be filed within three years of the act. However, citing a subdivision of the statute which then declared " '[n]othing in this bill is intended to preclude the courts from applying delayed discovery exceptions to the accrual of a cause of action for sexual molestation of a minor,' " the Court of Appeal concluded, "[t]he Legislature thus has disavowed any intent to interfere with the judicial determination of whether the delayed discovery rule should apply." (*Evans* v. *Eckelman, supra,* 216 Cal.App.3d at p. 1614.) Then, noting the "confidential" nature of the parent-child relationship, and "the unique duties and authority held by the parent," the court found this action analogous to cases involving either "professional negligence" or a defendant's concealment of its tortious conduct from the victim. (*Id.* at p. 1616.)

To the extent *April Enterprises* and *Evans* suggest there is a broad rule applying the discovery rule to the statute of limitations whenever it is difficult for a plaintiff to ascertain the facts constituting a cause of action, the cases violate the legislative mandate contained in section 312, demanding that, except as authorized by statute ". . . civil actions can only be commenced within the periods prescribed in this title." Statutes of limitations are more than mere "technical defenses" which courts should attempt to circumvent in order to give parties their day in court. They serve salutary purposes in requiring "diligent prosecution of known claims so that legal affairs can have their necessary finality and predictability and so that claims can be resolved while evidence remains reasonably available and fresh." (*Jordache Enterprises, Inc.* v. *Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 756 [76 Cal.Rptr.2d 749, 958 P.2d 1062].)

Finally, even if a delayed discovery rule were legally appropriate, the facts here do not support its application. Witkin explains that "constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has . . . the opportunity to obtain knowledge from sources open to his investigation (such as public records . . .), the statute commences to run." (3 Witkin, Cal. Procedure, *supra*, Actions, § 602, 773; see also *Lee* v. *Escrow Consultants, Inc.* (1989) 210 Cal.App.3d 915, 920 [259 Cal.Rptr. 117]; *Parsons* v. *Tickner, supra,* 31 Cal.App.4th at p. 1525.) Failure to examine a public record can hardly qualify as an exercise of reasonable diligence.

The gravamen of the complaints at issue is that petitioners failed to timely record deeds of reconveyance after real parties satisfied the underlying debts. Recording a document consists of copying it in a record book and indexing the instrument under the parties' names. (Gov. Code, §§ 27257, 27322 et seq.) All real parties had to do was go to the county recorder's office and look for their names in the indices. We must assume the average property owner is intelligent enough to review public records and determine whether a deed of reconveyance was filed. Thus, real parties' assertion the recording system is too complex for nonprofessionals to utilize lacks merit.

The majority also cites letters sent by title insurance companies, which expressed an intent to record releases of obligation, to support the proposition real parties' failure to inquire was reasonable. Just the opposite is true. Under Civil Code section 2941, once the debtor has satisfied the underlying obligation, the lender must execute and deliver the original note, trust deed, and a request for reconveyance to the trustee who must then execute and record a deed of reconveyance within 21 days. (Civ. Code, § 2941, subd. (b)(1).) If the trustee fails to comply with its statutory obligations within 60 days, the lender must, at the debtor's request, substitute itself or another entity as the trustee and issue the reconveyance. (Civ. Code, § 2941, subd. (b)(2).) Section 2941, subdivision (b)(3) then declares "If a full reconveyance has not been executed and recorded pursuant to either paragraph (1) or paragraph (2) within 75 calendar days of satisfaction of the obligation, then a title insurance company may prepare and record a release of the obligation. . . ."

As explained in *Trustors Security Service* v. *Title Recon Tracking Service* (1996) 49 Cal.App.4th 592 [56 Cal.Rptr.2d 793], "Section 2941, subdivision (b)(3) provides what is essentially a second fallback provision to be employed as a last resort after the preferred methods have failed to reconvey title. If neither the preferred method nor the first alternative method results

in a reconveyance of title within 75 days of satisfaction of an obligation secured by a deed of trust, then title insurers are authorized, after notice to the lender/beneficiary, trustor and trustee, to file a 'release of obligation.' [¶] This statutory scheme implies title insurers are only authorized to act in the event the lender/beneficiary and trustee have both failed to issue a reconveyance despite the opportunity to do so. . . ." (*Id.* at pp. 601-602.) In other words, a debtor who receives a letter from a title insurer declaring an intent to file a release of obligation is effectively placed on notice the lender has failed to satisfy its obligations under Civil Code section 2941.

I would find real parties' actions barred by the one-year statute of limitations contained in section 340, subdivision (1).

A petition for a rehearing was denied October 29, 1998, and the opinion was modified to read as printed above.