[No. B035169. Second Dist., Div. Four. May 22, 1989.]

MONTY S. LEE, Plaintiff and Appellant, v.
ESCROW CONSULTANTS, INC., Defendant and Respondent.

**COUNSEL**

Lewis B. Kean for Plaintiff and Appellant.

Weinberg, Zipser, Arbiter, Heller & Quinn, Steven A. Morriss and Laurence D. Strick for Defendant and Respondent.

**OPINION**

**McCLOSKY, J.**—Plaintiff Monty Lee appeals from the order of dismissal entered after the trial court sustained without leave to amend the demurrer of defendant Escrow Consultants, Inc.

*Factual and Procedural History*

In his original complaint plaintiff purported to plead causes of action for fraud, breach of contract, negligence, and conversion against defendant arising out of plaintiff's $100,000 investment in a real property transaction. Defendant demurred to the original complaint on the grounds that the various causes of action were barred by the applicable statute of limitations. The trial court sustained defendant's demurrer with leave to amend, ruling: "Plaintiff has not alleged facts showing grounds for delayed discovery or tolling of the statutes of limitation." Plaintiff then filed a first amended

complaint in which he attempted to explain the reason for the delay in commencing this action. Defendant again demurred. In sustaining that demurrer with leave to amend the trial court ruled: "[I]f plaintiff is going to rely upon a theory of delayed discovery, additional facts showing the reasonableness of the delay must be alleged and the dates of critical events cannot be omitted simply to plead around the applicable statute of limitations. For example, when was the alleged breach of contract? . . . Further, what is plaintiff's authority for the proposition that the concept of delayed discovery applies to a cause of action for breach of contract? . . . When was the alleged conversion? . . .

"To plead around the statute of limitations, plaintiff must allege facts (not conclusions) showing the dates of cognizable events; it is these events, and not knowledge of their legal significance, that start the running of the statute of limitations. [Citation.] Moreover, once a person becomes aware of facts which would make a reasonably prudent person suspicious, that person has a duty to investigate further, and is charged with knowledge which would have been revealed by such an investigation. [Citation.]

". . . . . . . . . . . . . . . . . . .

"This Is the Final Opportunity to Amend."

In response to the trial court's ruling plaintiff filed a "corrected second amended complaint." ▮ ▮▮▮▮ In that pleading plaintiff attempts to allege causes of action for fraud, breach of contract, negligence, conversion and civil conspiracy against defendant.[1] In substance, plaintiff alleges that in June 1981 an escrow was opened with defendant through which Richard B. Mitchell and Ann S. Mitchell purported to sell a parcel of real property located in Pima, Arizona to Benzion Cohen and Solayman Saberi for $1,373,750.[2] On September 24, 1981, an amendment to the escrow was filed assigning "all right, title and interest" in the Pima property to plaintiff, his wife Joan Lee, Hedy S. Kay and Abraham Hayun. Pursuant to this amendment, plaintiff deposited $100,000 into the escrow.

On September 25, 1981, another amendment to the escrow instructions was filed. This amendment bore the forged signature of plaintiff and purported to authorize the release of $79,000 to the sellers. Other escrow amendments authorized the withdrawal of escrow funds on July 8, August

---

[1] In reviewing the propriety of the trial court's ruling we accept the well pleaded factual allegations in plaintiff's corrected second amended complaint as true. *(Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].)

[2] Mr. Mitchell, Ms. Mitchell, Mr. Cohen and Mr. Saberi along with one Rafael Kay are all named defendants in the complaint, but are not parties to this appeal.

4 and September 11, 1981. Plaintiff did not learn of these withdrawals until August, 1986. Prior to that time, plaintiff had been informed by Mr. Cohen that title to the property had passed but that escrow could not close until problems relating to subdivision approval were solved. Only $5,100 now remains in the escrow, and no title to the Pima property has passed.

In his fraud cause of action, plaintiff alleges that the Mitchells never held any interest in the Pima property and that Mr. Cohen misrepresented their interest in order to induce plaintiff to deposit $100,000 into the escrow. Plaintiff further alleges that defendant did not attempt to verify his signature on the escrow amendment which purported to authorize the release of funds.

In his breach of contract cause of action, plaintiff alleges that defendant breached the escrow agreement by releasing funds pursuant to the fraudulent amendment.

In his negligence cause of action, plaintiff alleges that defendant negligently failed to verify plaintiff's signature on the escrow amendment.

Next, plaintiff alleges that the unauthorized withdrawal of his funds from the escrow constituted a conversion. Finally, plaintiff alleges that defendants conspired with each other to defraud him.

Defendant again interposed a general demurrer to plaintiff's second amended complaint. The trial court sustained that demurrer without leave to amend and rendered an order of dismissal. This appeal follows.

LEGAL DISCUSSION

I

Plaintiff first contends that the trial court erroneously sustained defendant's demurrer on statute of limitations grounds. Plaintiff urges that "Code of Civil Procedure § 337 and § 339 provides that when the ground for rescission of either an oral contract or contract in writing is fraud or mistake the time does not begin to run until the discovery by the aggrieved party of the facts constituting the fraud or mistake." Initially, we note that this assertion is targeted only to the timeliness of plaintiff's breach of contract cause of action. It does not directly address the propriety of the trial court's ruling with respect to the fraud, negligence, conversion and civil conspiracy causes of action. Each of those causes of action, however, is premised upon the identical alleged wrongful conduct. Accordingly, under the facts of this case the same timeliness analysis applies to each cause

of action. (*April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 828 [195 Cal.Rptr. 421].)

■ In the present case the final wrongful act alleged by plaintiff occurred on September 25, 1981. Plaintiff did not file his original complaint until November 21, 1986. The parties are in agreement that the timeliness of this action turns on whether plaintiff has pleaded sufficient facts to toll the limitations period due to the delayed discovery doctrine embodied in Code of Civil Procedure section 338, subdivision 4.[3] Plaintiff alleges that he did not learn of defendant's wrongful conduct until August of 1986. In arguing that plaintiff's alleged ignorance was insufficient to toll the limitations period, defendant relies on the following passage from Witkin: "C.C.P. 338(4) adds the statement (commonly found in fraud statutes of limitation: [citation]): 'The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.' Literally interpreted, this language would give the plaintiff an unlimited period to sue if he could establish ignorance of the facts. But the courts have read into the statute a duty to exercise diligence to discover the facts. The rule is that the plaintiff must *plead and prove the facts* showing: (a) Lack of knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date). (c) How and when he did actually discover the fraud or mistake. Under this rule constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books), the statute commences to run." (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 454, pp. 484-485.)

The trial court also apparently relied upon plaintiff's failure to plead facts demonstrating the reasonableness of his delayed discovery in sustaining defendant's demurrer.[4] In reaching this conclusion, the trial court acknowledged the holding in *Kirby* v. *Palos Verdes Escrow Co.* (1986) 183

---

[3] Section 338 prescribes a three-year limitation period for "[a]n action for relief on the ground of fraud or mistake. The cause of action in that case is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

[4] The trial court expressly stated this as a basis for its ruling when it sustained defendant's demurrer to plaintiff's first amended complaint with leave to amend. As explained above, the trial court admonished plaintiff that "[t]his is the final opportunity to amend." Thus, although the court sustained defendant's demurrer to plaintiff's second amended complaint without leave to amend without explaining the basis for its ruling, it is apparent that the court was again focusing on plaintiff's failure to allege facts explaining the reasonableness of his delay.

Cal.App.3d 57, 64 [227 Cal.Rptr. 785], that "[a]n escrow holder is the limited agent and fiduciary of all parties to an escrow. [Citations.] The agency is limited because the escrow agent only represents his principals insofar as he carries out the escrow instructions."

The trial court did not, however, recognize that the fiduciary relationship between plaintiff and defendant relaxed plaintiff's duty to inquire into the circumstances surrounding defendant's alleged fraud. As Witkin explains: "If the plaintiff and defendant are in a confidential relationship there is no duty of inquiry until the relationship is repudiated. The nature of the relationship is such as to cause the plaintiff to rely on the fiduciary, and awareness of facts which would ordinarily call for investigation does not excite suspicion under these special circumstances. . . . [¶] . . . . [¶] However, once the plaintiff becomes aware of facts which would make a reasonably prudent person suspicious, the duty to investigate arises, and he may then be charged with knowledge of facts that would have been discovered by such an investigation. [Citation.]" (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 456, p. 487.)

In this case, since the fiduciary relationship between plaintiff and defendant is limited to defendant carrying out the escrow instructions, so, too, must the relaxed duty of plaintiff to inquire be limited in such a manner. In other words, plaintiff was entitled to assume without inquiry only that defendant was carrying out the escrow instructions. Plaintiff's various causes of action are premised on the improper withdrawal of funds from the escrow due to an allegedly forged amendment to the escrow instructions. The original escrow instructions state in capital letters: "NO NOTICE DEMAND OR CHANGE OF INSTRUCTIONS SHALL BE OF ANY EFFECT IN THIS ESCROW UNLESS GIVEN IN WRITING BY ALL PARTIES AFFECTED THEREBY." In effect, plaintiff pleads that defendant violated this provision by disbursing funds pursuant to an amendment which was not "given in writing by all parties affected thereby." Thus, plaintiff had no duty to inquire whether any funds were improperly disbursed unless he was "aware of facts which would make a reasonably prudent person suspicious, . . ." (*Bedolla* v. *Logan & Frazer* (1975) 52 Cal.App.3d 118, 131 [125 Cal.Rptr. 59].)

Defendant argues that plaintiff pleads "no facts explaining *why* it took [him] *six years* to 'become suspicious' or to discover (1) that he did not receive title to the Pima property (2) that he had not received a recorded (or even unrecorded) Deed of Title from any one [*sic*] or (3) that he had not or was not realizing his 'profits' from his investment." (Italics in original.) Plaintiff does allege, however, that "[e]very few months between 1981 to 1986 when Plaintiff checked with Defendant BENZION COHEN or his step-

brother ABRAHAM HAYUN he was assured that progress was being made and that it was only the complexity of the transaction and not any problem with title that stopped the matter from final closing." In view of these alleged assurances we are unable to say as a matter of law that the facts pleaded in the corrected second amended complaint should have made plaintiff sufficiently suspicious to inquire of defendant whether it had properly performed its duty as an escrow.

■ In sustaining defendant's demurrer to plaintiff's first amended complaint, the trial court questioned whether the delayed discovery rule could apply to a cause of action for breach of contract. This question was properly resolved in *April Enterprises, Inc.* v. *KTTV, supra,* 147 Cal.App.3d 805. There, the plaintiff commenced an action for breach of the implied covenant of fair dealing and breach of fiduciary duty arising out of a joint venture between the parties to produce a television program. Plaintiff alleged that shortly before it commenced its action it discovered that defendant had breached their agreement by erasing video tapes of the program. Defendant moved for judgment on the pleadings in part based on its claim that plaintiff's causes of action accrued six years before it commenced the action when the actual erasures occurred. The trial court granted defendant's motion and the Court of Appeal reversed.

Initially, the court concluded that plaintiff's cause of action for breach of fiduciary duty was not time-barred because the existence of a fiduciary relationship tolled the limitations period until plaintiff actually discovered the wrongdoing. (147 Cal.App.3d at pp. 827-828.) Turning to plaintiff's cause of action for breach of the implied covenant of fair dealing the court explained that " '[t]he nature of the right sued on, not the form of the action . . . determines the applicability of the statute of limitations.' [Citations.] Here, both causes of action arise out of the fiduciary relationship. When a joint venturer commits a breach of fiduciary duty, the act may often, as here, constitute a breach of contract as well. Given the policy reasons for applying the discovery rule to a fiduciary, it would be pointless to permit the former cause of action and bar the latter. Thus the breach of contract cause of action also accrued at the discovery of the actual erasure." (147 Cal.App.3d at p. 828.)

This reasoning applies with equal force to plaintiff's breach of contract claim in the present case. That cause of action is premised upon the identical wrongful disbursement of funds which is at the heart of plaintiff's fraud cause of action. Since that alleged wrongful disbursement constitutes a breach of fiduciary duty by defendant, the discovery rule should apply to

both causes of action.[5] We, therefore, conclude that the trial court could not have properly sustained defendant's demurrer on statute of limitations grounds.

## II

In its demurrer defendant, in addition to arguing that plaintiff's action was time-barred, argued that it could not be liable for disbursing funds pursuant to an amendment to the escrow instructions which on its face appeared proper.

Plaintiff contends that "[a]n escrow holder is a fiduciary and is under a duty to communicate to his principal knowledge acquired in the course of his agency with respect to material facts which might affect the principal's decision as to a pending transaction, . . ." In this contention, plaintiff urges that his allegation that defendant neither informed him that it had disbursed funds nor that title had not passed to the Pima property is sufficient to demonstrate that defendant "was guilty of breach of their [sic] fiduciary duty as an escrow holder and were negligent in the disbursal [sic] of funds out of escrow, . . ."

In arguing that it was under no such duty to apprise plaintiff, defendant relies on Lee v. Title Ins. & Trust Co. (1968) 264 Cal.App.2d 160 [70 Cal.Rptr. 378]. In Lee, the plaintiff brought an action for fraud, breach of contract, breach of trust and malpractice against an escrow holder due to the escrow holder's failure to notify the plaintiff of the following facts: (1) a $135,000 trust deed on the property secured only a $100,000 loan and (2) the property sellers fraudulently conspired to sell the plaintiff the property "at a price much greater than the price for which the property could be acquired." (Id., at p. 161, fn. 1.) The trial court sustained the escrow holder's demurrer and dismissed the action. The Court of Appeal affirmed.

Initially, the court noted that the plaintiff had not alleged that the escrow holder colluded with the sellers to defraud him. Nor did the plaintiff allege that the escrow holder negligently failed to comply with the escrow instructions. The court explained: "Put abstractly, the crucial question is whether

---

[5] As an alternative basis for its decision, the April Enterprises court concluded that "the discovery rule may be applied to breaches [of contract] which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." (Id., at p. 832.) Under this alternative holding, the discovery rule applies where, as here, an escrow holder allegedly disburses funds pursuant to a forged amendment to the escrow instructions without informing the plaintiff.

an escrow holder is under a fiduciary duty to go beyond the escrow instructions and to notify each party to the escrow of any suspicious fact or circumstance which has come to his attention before or during the life of the escrow which could conceivably affect such party even though the fact or circumstance is not related to his specific escrow instructions." (264 Cal.App.2d at p. 162.)

In concluding that no such duty existed the court first explained that the courts had recognized that an escrow holder was an agent of the parties to the transaction only for the limited purpose of acting in accordance with the escrow instructions. (264 Cal.App.2d at p. 162.) The court then reasoned that if this duty were expanded to include a duty to disclose then "once an escrow holder received information (from whatever source) he would be forced to decide independently whether to believe the information and disclose it or disbelieve it and conceal his knowledge. If he concealed his knowledge he would risk suit. If he discloses and the information is inaccurate, he may be sued by all the parties to the escrow for interfering with their contract. Establishing a rule which would create such a dilemma and subject the escrow holder to a high risk of litigation would damage a valuable business procedure." (264 Cal.App.2d at p. 163; fn. omitted.)

As distinct from *Lee,* the wrongful conduct alleged in the present case relates to defendant's failure to carry out the escrow instructions by disbursing funds pursuant to a forged amendment. As explained above, the original escrow instructions provided that "NO NOTICE DEMAND OR CHANGE OF INSTRUCTIONS SHALL BE OF ANY EFFECT IN THIS ESCROW UNLESS GIVEN IN WRITING BY ALL PARTIES AFFECTED THEREBY." The recognition of a duty to verify the signature on an amendment to the escrow instructions when those instructions require any amendment be given in writing by all of the parties, will not place the escrow holder in the dilemma the *Lee* court sought to avoid. Verification is not the equivalent of an accusation of wrongdoing. Thus, an escrow holder who verifies a signature in order to ensure it is complying with the terms of the escrow instructions is not subjecting itself to the risk of suit. We, therefore, conclude that the limited nature of an escrow holder's duty does not preclude plaintiff from stating a cause of action.

### III

■ Defendant next urges that plaintiff fails to allege the essential elements necessary to state a cause of action for fraud. Defendant points to the allegation in plaintiff's fraud cause of action that "[a]t no time prior to

disbursement of the Escrow funds did Defendant . . . make any attempt to contact Plaintiff, verify his signature, or to inform Plaintiff that the funds had been disbursed" and argues that absent from this allegation is any claim of misrepresentation, intent to induce reliance, intent to defraud, or knowledge of falsity.

We initially note that defendant did not include this assertion as a ground of its demurrer. Accordingly, unless we are able to conclude that plaintiff's fraud cause of action is fatally flawed, so that it is incapable of being corrected by amendment, we will not rely upon this assertion to uphold the trial court's ruling. As we now explain, this assertion has no merit for a number of reasons.

First, defendant ignores plaintiff's allegations in the fraud cause of action clearly explaining the fraudulent conduct in which the other defendants allegedly directly engaged. Plaintiff alleges that "Defendants, and each of them" conspired to engage in this fraudulent conduct. This allegation is sufficient to subject defendant to liability for fraud. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 869, pp. 310-311.)[6]

Secondly, although not artfully pleaded plaintiff has alleged sufficient facts to form the basis of a fraud cause of action against defendant in its capacity as an escrow holder. In asserting that plaintiff fails to allege any misrepresentation of facts, defendant fails to recognize that due to its fiduciary relationship with plaintiff its nondisclosure of facts it had a duty to disclose could form the basis of a fraud cause of action. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 666, pp. 116-117.) The other claimed deficiencies in plaintiff's fraud cause of action relate to the clarity of plaintiff's pleading rather than whether he is able to state a cause of action. For example, plaintiff alleges that "Defendants knew and understood that their representations regarding the performance of the escrow and purchase of the subject property were false and made those misrepresentations with the intent to defraud and deceive Plaintiff." It is unclear whether this allegation relates to defendant only in its capacity as an alleged coconspirator or whether the allegation also relates to defendant in its capacity as an escrow holder. Plaintiff should be given an opportunity to amend to remove any such uncertainty.

---

[6] Defendant demurred to plaintiff's cause of action for civil conspiracy only on timeliness grounds. Accordingly, we do not pass on whether plaintiff adequately pleads a cause of action for civil conspiracy.

The judgment (order) of dismissal is reversed. Plaintiff shall recover costs on appeal.

Woods (A. M.), P. J., and George, J., concurred.

A petition for a rehearing was denied June 7, 1989, and respondent's petition for review by the Supreme Court was denied August 9, 1989. Panelli, J., was of the opinion that the petition should be granted.