## EUGENE A. HAYBER *v.* DEPARTMENT OF CONSUMER PROTECTION, REAL ESTATE COMMISSION*

Superior Court, Judicial District of New Britain
File No. CV-020513973

Memorandum filed March 8, 2004

*Richard E. Hayber*, for the plaintiff.

*Lawrence G. Widem*, assistant attorney general, for the defendant.

OWENS, J. In this administrative appeal, the plaintiff real estate broker, Eugene A. Hayber, challenges an order by the defendant real estate commission that he make restitution to certain third parties.

I

### FACTS

In 1997, the plaintiff was a licensed real estate broker. In 1997, he was retained by Steven Rocco and Jonathon

---

* Affirmed. *Hayber* v. *Dept. of Consumer Protection*, 87 Conn. App. 625, 866 A.2d 644 (2005).

Gottlieb to market the sale of property at 106 High Street in Higganum. On or about May 8, 1995, the plaintiff entered into an exclusive right to sell contract with Rocco and Gottlieb to sell the residential property. The property was to be listed for $215,000. The contract required Rocco and Gottlieb to pay the plaintiff a commission of 6 percent of the agreed sales price if the property was sold or if the agent, owner or anyone else found a buyer ready, willing and able to buy the listed property either for the listed price or for any other price accepted by the sellers. The contract was extended to cover the period through and including December 31, 1996.

The plaintiff was able to find buyers, Christopher Harris and Carla Harris. The buyers entered into a sale and purchase agreement (agreement) with Rocco and Gottlieb for the purchase of the property. The agreement contained three separate agreements. It contained a bedrock purchase and sale agreement between the buyers and the sellers. Paragraph Q created a broker's commission agreement in favor of the plaintiff. Paragraph D created an escrow agreement and designated the plaintiff as an escrow agent with fiduciary obligations to both the buyers and the sellers.

The purchase price was $189,900. The purchase price was later changed to $213,900 by way of an addendum to the original sale and purchase agreement. The addendum was dated January 7, 1997. Later, the contract was modified to add a "Hubbard" clause, which made the buyers' obligation contingent on the sale of their home. On or about June 26, 1997, the buyers gave notice to the sellers that their home was the subject of a contract for sale and that the buyers intended to perform under the agreement. On June 30, 1997, the buyers gave the plaintiff a down payment of $16,000 to be held in escrow in accordance with the terms of paragraph D of the agreement.

On or about August 4, 1997, the buyers, through their attorney, informed the sellers, Rocco and Gottlieb, that they would not perform under the agreement. The buyers backed out of the sale over disputes regarding the renovations to be done on the home. As a result of that default, under the terms of the agreement, paragraph E, "all initial and additional deposit funds provided in #4, shall be paid over to and retained by Seller as liquidated damages . . . ." Rocco and Gottlieb became entitled to the $16,000 as liquidated damages. Subsequently, in the winter of 1999, the buyers and the sellers agreed to split the $16,000 among themselves. On or about September 1, 1997, the plaintiff sent an invoice to Rocco and Gottlieb seeking his 6 percent commission for finding buyers who were ready, willing and able to purchase the property. He sought a commission in the amount of $12,834. To date, Rocco and Gottlieb have not paid that commission.

In a letter dated March 29, 1999, attorney John A. Corona advised the plaintiff of the agreement to split the $16,000, demanded a release of the escrow funds and asked the plaintiff to confirm the accuracy of that representation with the sellers' counsel. The plaintiff received the letter, but never contacted the buyers or the sellers to confirm Corona's representation. To this date, the plaintiff has refused to release the funds in the escrow account, and the money remains in the plaintiff's account. The plaintiff has refused to release the funds because he believes he is owed a commission for producing ready, willing and able buyers. Additionally, when he appeared before the state real estate commission, he claimed that his refusal was due to the fact that the letter from Corona was not countersigned by each of the buyers and the sellers in accordance with provisions in the escrow agreement, which he alleges prohibits him from releasing funds without the consent of all parties.

II

## PROCEDURAL HISTORY

On September 12, 2000, Corona, on behalf of the buyers, and attorney Howard E. Kantrovitz, on behalf of the sellers, wrote to attorney Richard E. Hayber, who was now representing the plaintiff. Both letters stated that the parties had reached an agreement and that the money held in escrow should immediately be released to Corona.

On August 21, 2000, the department of consumer protection, occupational and professional licensing division, real estate commission, caused a notice to be served on the plaintiff, advising him of a formal hearing to be held on September 7, 2000, regarding a complaint filed by Rocco and the buyers. The September 7, 2000 hearing was continued to October 12, 2000, when the real estate commission held a partial hearing. Additional evidence was requested at that time, and another hearing was scheduled November 2, 2000. That hearing was postponed to December 12, 2000, and thereafter to February 1, 2001. The plaintiff and his attorney appeared only at the hearing on October 12, 2000. At that hearing, the plaintiff conceded that he had received the instructions to release the money in escrow, but maintained that because he had produced ready, willing and able buyers, he was due a commission. For that reason, he would not release the money. The plaintiff alleges that he received no notice regarding the hearing on December 12, 2000.

On July 12, 2001, Bruce H. Cagenello, chairman of the real estate commission, signed a memorandum of decision, ordering the plaintiff to make restitution of the $16,000 escrow deposit, plus interest, and to pay a $2000 civil penalty. The plaintiff's counsel received the decision on December 21, 2001. On or about January 3, 2002, the plaintiff, through his attorney, asked for a

reconsideration of the decision by way of an appeal and request for a hearing before the commissioner, with attachments. No such hearing has been granted to date. The plaintiff has now filed an administrative appeal with the court.

## III

## STANDARD OF REVIEW

When reviewing the actions of an administrative agency, the court must "determine whether there is substantial evidence in the administrative record to support the agency's finding of basic fact and whether the conclusions drawn from those facts are reasonable." *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 216 Conn. 627, 639, 583 A.2d 906 (1990). " 'Substantial evidence' exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." Id., 639–40, quoting *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 541, 525 A.2d 940 (1987).

"In challenging an administrative agency action, the plaintiff has the burden of proof." (Internal quotation marks omitted.) *Tarullo* v. *Inland Wetlands & Watercourses Commission*, 263 Conn. 572, 584, 821 A.2d 734 (2003). "The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion." *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 587, 628 A.2d 1286 (1993). "[T]he plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." Id., 587, citing *Feinson* v. *Conservation Commission*, 180 Conn. 421, 425, 429 A.2d 910 (1980). "[I]t is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record." *Calandro* v.

*Zoning Commission,* 176 Conn. 439, 440, 408 A.2d 229 (1979).

## IV

## DISCUSSION

There are two issues on appeal to the court: (1) whether an escrow agent, bound by the terms of an escrow agreement that requires the "written consent of the parties," has the right to release funds from escrow with a letter from a party's attorney authorizing the release and (2) whether a listing broker who derives rights to his commission from the purchase and sale agreement is a "party" to an escrow agreement for purposes of releasing the funds in escrow.

In response to the first issue, a writing delivered to the escrow agent by a party's attorney will suffice to authorize the release of the funds in escrow as long as the authorization is made in good faith.

The plaintiff cites *Lee* v. *Escrow Consultants, Inc.,* 210 Cal. App. 3d 915, 259 Cal. Rptr. 117, review denied, 1989 Cal. LEXIS 4019 (August 9, 1989), to support his proposition that an escrow agent cannot release the funds in escrow until he is satisfied that each signature is valid. *Lee,* however, is distinguishable from this case. The *Lee* court held that a breach of contract action against an escrow agent for failure to seek verification of the signatures to a suspicious amendment to the escrow agreement would survive a motion to strike. Id., 923–24. The depositor would have a chance to prove his claim that the escrow agent had breached his fiduciary duty to use ordinary diligence in safeguarding the escrow from fraud. Id. The plaintiff has misread *Lee.* Additionally, the plaintiff states that *Lee* held that an escrow agent has a "duty to verify the signature on an amendment to the escrow instructions when those instructions require any amendment be given in writing

by all of the parties . . . ." Id., 924. The plaintiff, however, admitted at the real estate commission's hearing that he never contacted any of the parties, the buyers or the sellers, to confirm the representations in the letter from Corona.

The escrow agent's duty is limited by the terms of the escrow agreement. Without a provision in the contract to the contrary, the escrow agent is not required to "actively root out fraud of which it had no knowledge . . . ." *Schultz* v. *Rhode Island Hospital Trust National Bank, N.A.*, 94 F.3d 721, 729 (1st Cir. 1996). Moreover, "[i]t is not in his province to interpret or construe a contract where he has a duty to perform; he must be guided in his duty by what the contract says." (Internal quotation marks omitted.) *Norwich Lumber Co.* v. *Yatroussis*, 5 Conn. Cir. Ct. 95, 101, 243 A.2d 311 (1967).

The plaintiff received the letter from Corona with instructions to release the funds in escrow. The plaintiff, however, refused to release the funds because the letter was not signed by each of the parties. The plaintiff argues that a release of funds without the signature of each party to the agreement would be in violation of his fiduciary duties. Joan Emerick of the real estate commission testified at the hearing that the state board of realtors allows Realtors to release escrow funds pursuant to notice from counsel. The plaintiff's fiduciary duty to the parties did not require him to demand a formal writing by all the parties in addition to Corona's signed letter. He was required to release the funds on receipt of the letter.

If the plaintiff doubted the authority of the letter, then he was obligated to contact each party and to confirm the order to release the funds in escrow. The plaintiff did not contact any of the parties. Additionally, the plaintiff wrote a letter to Emerick in which he admitted that he had withheld the release of the escrow funds

to force the payment of his broker's commission. For the foregoing reasons, the plaintiff had a duty to release the funds in escrow on receipt of the letter from Corona. The real estate commission's findings are affirmed.

In response to the second issue, the plaintiff was a party to the commission agreement. He was not, however, a party to the escrow agreement. The sale and purchase agreement contained three separate agreements: (1) the underlying real estate agreement; (2) the escrow agreement; and (3) the broker's commission agreement. Regarding the escrow agreement, the plaintiff was a fiduciary to the parties, but he was not a party, and his consent was not required to release the funds. Simply because the plaintiff was a party to the broker's commission agreement, he was not, thereby, a party to the escrow agreement. Therefore, his consent was not needed to release the funds in escrow. The escrow agreement was created by the parties to facilitate the administration of the real estate transaction. The plaintiff's acceptance of his duties as an escrow agent do not make him a party to the agreement or permit him to condition the discharge of the escrow funds on the payment of his disputed commission. Nothing in the escrow agreement requires the plaintiff's consent as a condition for the discharge of the funds.

V

CONCLUSION

The plaintiff's claims have no merit. The plaintiff breached his fiduciary duties as an escrow agent by withholding the funds in escrow against the agreement of the parties. The real estate commission has ordered the plaintiff to return the $16,000 and has imposed statutory sanctions to discipline him. For the foregoing reasons, the decision of the real estate commission is affirmed, and the plaintiff's appeal is dismissed.