Filed 3/30/16  Ramos v. Romero CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| JOSE F. RAMOS et al., | |
|     Cross-complainants and Appellants, | E062963 |
| v. | (Super.Ct.No. RIC10016799) |
| RAFAEL ROMERO et al., | OPINION |
|     Cross-defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni and Sunshine S. Sykes, Judges.  Affirmed.

Aviles & Associates and Moises A. Aviles for Cross-complainants and Appellants.

Charlton Weeks and Erik Gunderson for Cross-defendants and Respondents, Rafael Romero and Olivia P. Romero.

Edwards Law and Rex E. Edwards for Cross-defendant and Respondent, New Colony Escrow, Inc.

No appearance by Cross-defendant and Respondent, Bank of America.

1

This case arises out of a fraudulent sale of a vacant plot of land in Menifee. Cross-complainants and appellants Jose F. and Elisa T. Ramos (the Ramoses) purchased the property from an identity thief posing as the true owners of the land, cross-defendants and respondents Rafael and Olivia P. Romero (the Romeros).

The Romeros sued the Ramoses to quiet title to the property, and the Ramoses filed a cross-complaint against the Romeros, New Colony Escrow, Inc., Bank of America, N.A., and the parties involved in the identity theft and fraudulent sale. Ultimately, the court dismissed the Ramoses' cross-complaint in its entirety and entered judgment in favor of the Romeros on their quiet title and other claims.

On appeal, the Ramoses challenge the trial court's dismissal of their negligence and breach of fiduciary duty claims against the escrow company involved in the sale, cross-defendant and respondent New Colony Escrow, Inc. (NCE). The Ramoses also challenge the trial court's denial of their motion to strike or tax costs awarded to the Romeros in the amount of $3,416.95. We find the arguments raised in the Ramoses' brief without merit, and we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

According to the allegations in their cross-complaint, in September 2009, the Ramoses decided to buy a plot of vacant land in Menifee, in response to a newspaper advertisement. Unbeknownst to them at the time, cross-defendant Salvador Gutierrez

2

Anzo, Sr. (Anzo) was posing as the true owners of the property, the Romeros. NCE provided the escrow services for the sale. In July 2010, NCE alerted the Ramoses that the sale was possibly fraudulent and the result of identity theft and a forged deed.

In August 2010, the Romeros, the true owners of the property and the victims of the identify theft, sued the Ramoses, alleging claims of quiet title, slander of title, cancellation of instruments, and declaratory relief. The Ramoses filed a cross-complaint against the Romeros, NCE, Bank of America, N.A., and the parties allegedly involved in the forgery, identity theft, and fraudulent sale. The only claims at issue in this appeal are the Ramoses' negligence and breach of fiduciary duty claims against NCE. The Ramoses alleged that the escrow company failed to investigate and ascertain the true identity of the seller (i.e., Anzo acting as the Romeros) and failed to procure "title insurance giving proof that [the Ramoses] would have title to the property [they] believed they owned free and clear."

A.    *NCE's Demurrers and Motion to Strike*

NCE filed a demurrer to the cross-complaint in its entirety, which the court sustained with leave to amend. The Ramoses filed a verified first amended cross-complaint (FACC), and NCE again demurred. The court sustained the demurrer, allowing the Ramoses leave to amend the negligence and breach of fiduciary duty claims against NCE and dismissing all the other claims without leave to amend.

3

The Ramoses then filed a verified second amended cross-complaint (SACC). NCE moved to strike the cross-complaint in its entirety, pursuant to California Code of Civil Procedure section 436,[1] on the ground that the SACC violated a previous court order. NCE argued that the court had previously issued an order dismissing the negligence and fiduciary duty claims in the FACC on the ground that, barring escrow instructions to the contrary, escrow companies have no legal duty to investigate the identities of the parties to a sale of property. NCE argued that the SACC contained the same legally deficient negligence and fiduciary duty claims that the court had already dismissed, without any substantive changes.

At a hearing on March 14, 2013, the court granted NCE's motion to strike, without leave to amend, stating that NCE had no duty to verify the identity of the parties. On August 22, 2014, the court entered an order dismissing the Ramoses' SACC in its entirety.

B.     *Costs Awarded to the Romeros*

With regard to the Romeros' quiet title action against the Ramoses, the parties agreed to a trial by stipulated facts, and the court granted summary judgment for the Romeros on all claims except slander of title. The court awarded the Romeros costs of $3,416.95.

---

[1] All unspecified statutory references are to the Code of Civil Procedure.

The Ramoses appeal the dismissal of the negligence and breach of fiduciary duty claims against NCE and the award of costs to the Romeros.

II

DISCUSSION

A.    *The Court Properly Struck the Negligence and Fiduciary Duty Claims*

Section 436, subdivision (b), authorizes a court to "[s]trike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court." We review a trial court's decision to strike a pleading for abuse of discretion. (*Pacific Gas & Electric Co. v. Superior Court* (2006) 144 Cal.App.4th 19, 23.) "The scope of discretion always resides in the particular law being applied; action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an abuse of discretion." (*Ibid.*)

The basis for NCE's motion to strike the negligence and fiduciary duty claims was that the SACC contained the same supporting allegations the court had already ruled were legally insufficient. In other words, NCE argued the Ramoses failed to make any substantive changes to their claims.

The record on appeal does not include the FACC, or any record of the court's ruling on NCE's demurrer, aside from that contained in the register of actions. "An appellate court's review is limited to consideration of the matters contained in the appellate record," and the appellant has the burden of "furnishing an appellate court with

5

a record sufficient to consider the issues on appeal." (*People v. Neilson* (2007) 154 Cal.App.4th 1529, 1534.) In the absence of an adequate record to support the appellant's claim of error, "we presume the judgment is correct." (*Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039.) On this record, we cannot review the allegations in the FACC supporting the negligence and fiduciary duty claims or the court's reason for sustaining NCE's demurrer. We must therefore presume that the court's ruling granting the motion to strike the negligence and fiduciary duty claims was reasonable.

We also uphold the court's ruling striking the SACC's negligence and fiduciary duty claims on the ground the court provided at the hearing on NCE's motion to strike, i.e., that escrow companies do not have a duty to investigate the identities of the parties to a sale of property. "[A]n escrow holder 'has no general duty to police the affairs of its depositors'; rather, an escrow holder's obligations are 'limited to faithful compliance with [the depositors'] instructions.'" (*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711.)

Here, the escrow instructions did not require NCE to verify or investigate the identities of the parties, nor did it require NCE to procure title insurance that proved the Ramoses "would have title to the property that [they] believed they owned free and

6

clear."[2]  In fact, NCE's escrow instructions expressly disclaimed any duty to investigate

the parties' identities.[3]  The Ramoses have not alleged that NCE breached an escrow

instruction.

In arguing that NCE can in fact be liable for negligence, the Ramoses rely on *Zang*

*v. Northwestern Title Co.* (1982) 135 Cal.App.3d 159 (*Zang*) and *Lee v. Escrow*

*Consultants, Inc.* (1989) 210 Cal.App.3d 915 (*Lee*).  These cases are inapplicable because

they involve breaches of the escrow instructions.  (*Zang*, *supra*, at p. 169 "[the escrow

holders] themselves were involved in false representations and noncompliance with

escrow instructions"]; *Lee*, *supra*, at p. 924 ["the wrongful conduct alleged in the present

case relates to defendant's failure to carry out the escrow instructions"].)  NCE did not

breach the escrow instructions in the instant case.  The Ramoses negligence and fiduciary

duty claims fail because they attempt to impose on NCE a duty to take actions above and

beyond what was contained in the instructions.

The trial court did not abuse its discretion in granting NCE's motion to strike.

---

[2]  NCE apparently did provide title insurance.  The Ramoses' allegation seems to be that the title company did not identify the fraud when it prepared the preliminary report and recorded the forged grant deed.

[3]  Paragraph 10 of the escrow instructions states:  "[NCE is] not to be held liable for the sufficiency or correctness as to . . . any instrument deposited into this escrow, nor as to identi[t]y, authority, or rights of any person executing the same . . . [NCE's] duties hereunder shall be limited to the safekeeping of such money, instruments or other documents received by [NCE] as escrow holder and for the disposition of same in accordance with the written instructions accepted by [NCE] in this escrow."

B.    *The Cost Award Was Proper*

After the trial court entered judgment in favor of the Romeros on their quiet title, cancellation of instruments, and declaratory relief claims, the Romeros filed a $4,352.45 memorandum of costs.  The Romeros sought filing and motion fees of $1,050; a service of process fee of $100; court reporter fees of $388.50; and "other" costs in the amount of $2,813.95 (which they itemized and described in an attachment).

The Ramoses filed a motion to strike or tax costs, arguing that the Romeros were not entitled to any costs because the Romeros were not "prevailing parties."  The Ramoses also argued that the Romeros were not entitled to any costs because the Romeros had "obtained relief on the Order entered in the criminal case of *People v. Salvador Gutierrez Anzo, Sr., et al.*, Riverside Superior Court [c]ase No. RIF 1200551."  The Ramoses also claimed several of the items in the Romeros' memorandum were not authorized under section 1033.5.

At the hearing on costs, the court granted the Ramoses' motion with regard to $935.50, which consisted of $388.50 in court reporter fees and $547 in costs that the Romeros had stipulated to withdraw.  The court awarded the Romeros a total of $3,416.95 in costs.  We affirm the court's cost award.

Generally, a prevailing party is entitled to recover costs as a matter of right. (§ 1032, subd. (b).)  When recovery in a case is nonmonetary, the determination of the prevailing party is left to the discretion of the trial court, and the trial court "in its

8

discretion, may allow costs or not." (§ 1032, subd. (a)(4).) The prevailing party is the one who has prevailed "on a practical level" and who "has realized [his or her] litigation objectives." (*Zuehlsdorf v. Simi Valley Unified School Dist.* (2007) 148 Cal.App.4th 249, 257.)

It is clear that the Romeros were the prevailing party in this case. They sued the Ramoses in order to obtain a declaration that they are the true owners of the Menifee property and to restore title to the property to their name. The Romeros achieved this objective.

The Ramoses contend the Romeros cannot be the prevailing party in this civil case because they already obtained relief in a related criminal case. The outcome of a criminal case regarding the theft of the Romeros' identity and the forged deed is not relevant to the issue of who was the prevailing party in the instant dispute between the Romeros and the Ramoses. Furthermore, whatever relief the Romeros might be awarded as a result of the criminal case cannot be the same as the relief they obtained in this case. The instant case restored title to the Romeros' property to the Romeros.[4]

---

[4] The Ramoses filed a request for judicial notice with this court on August 17, 2015, and we reserved ruling on that motion for consideration with the appeal. The documents in the Ramoses' request relate to the criminal case (Riverside Superior Court case No. RIF 1200551). Because we conclude that case is not relevant to the issue of who is the prevailing party in the instant civil case, we decline to rule on the Ramoses' request.

The Ramoses argue the Romeros are not entitled to any costs because the identity thieves, not the Ramoses, should be responsible for these costs since the thieves were the true wrongdoers. This argument ignores the fact that, for whatever reason, it took a lawsuit to force the Ramoses to relinquish title to the Menifee property.

The question now becomes whether the Ramoses' challenges to specific cost items have merit. We conclude they do not.

Section 1033.5 lists specific costs that are authorized and specific costs that are disallowed. Section 1033.5 also provides that any item not authorized or disallowed (i.e., not specifically listed) "may be allowed or denied in the court's discretion." (§ 1033.5, subd. (c)(4).) "Whether a cost is statutorily authorized is a question of law we review de novo." (*Naser v. Lakeridge Athletic Club* (2014) 227 Cal.App.4th 571, 576.) We review a trial court's decision as to whether particular items of authorized costs were recoverable by the prevailing party for abuse of discretion. (*Ibid.*) A court does not abuse its discretion in awarding a cost if that cost is "reasonable in amount" and is "reasonably necessary to the conduct of the litigation rather than merely convenient." (§ 1033.5, subd. (c)(2)-(3).)

The Ramoses' brief challenges the court's denial of their motion to strike or tax costs as to eight items. We find no abuse of discretion with regard to these items.

1.      *Overnight Delivery Costs*

10

The Ramoses are challenging a cost the court did not award—$14.85 for overnight delivery of the Romeros' complaint. The Romeros withdrew all express mailing costs in their opposition to the Ramoses' motion.

2.    *Certified Copies*

The Ramoses challenge the costs of obtaining certified copies of five different documents ($125.50 total), arguing that costs of photocopies are not allowed under section 1033.5, subdivision (b)(3). These costs are not for photocopying. They are the costs of obtaining certified copies, which costs section 1033.5 does not expressly prohibit. Under section 1033.5, subdivision (c)(4), the court had discretion to award these costs. We find the court's decision to award them was reasonable because the total amount is minimal and certified copies are necessary, e.g., for authenticity.

3.    *Attorney Fees for Special Appearance*

Again, the Ramoses challenge a cost that the court did not award. The Romeros withdrew their request of $100 for a special appearance.

4.    *CourtCall Appearance Fees*

The Ramoses challenge the costs charged by CourtCall LLC for 11 appearance fees ($855 total), arguing that telephonic expenses are not allowed under section 1033.5, subdivision (b)(3). This subdivision excludes "telephone . . . charges," but the fee paid to CourtCall LLC is a fee for making a CourtCall appearance. It is not a fee for the use of a telephone. Section 1033.5 does not expressly prohibit CourtCall appearance fees, and

11

thus the court had discretion to award them.  (§ 1033.5, subd. (c)(4).)  We find the court reasonably awarded these costs to the Romeros because the amount is reasonable and CourtCall appearances were necessary to conduct the litigation.

### 5. *Recording Fee*

The Ramoses challenge the cost of recording a lis pendens with the county recorder ($22), arguing such a cost "is not covered under [section] 1033.5."  Where a cost, like the recording fee here, is not "covered" by section 1033.5, a court may award the cost in its discretion.  (§ 1033.5, subd. (c)(4).)  We find the award reasonable.

### 6. *Attorney Service Costs*

The Ramoses challenge attorney service costs associated with three fax filings ($177.50 total), arguing that "faxing expenses" are statutorily prohibited. As described by the Romeros, these are not faxing expenses. They are attorney service costs associated with filing documents with the court. The Ramoses also challenge the attorney service costs for filing three other documents ($75 total). Attorney service costs are not expressly listed in section 1033.5 and thus are within the court's discretion to award. (§ 1033.5, subd. (c)(4); *Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 776 (*Ladas*) [fees for courier and messenger services and filing documents were reasonable and properly awarded].) We find the award for attorney service costs reasonable because it was minimal and was incurred to file documents with the court.

### 7. *Litigation Guarantee (Title Insurance)*

The Ramoses argue that the $750 the Romeros paid to obtain a litigation guarantee from Fidelity National Title is not covered under section 1033.5. The Romeros respond that the cost was for title insurance, which is required in a real estate action in order to name all of the parties who have an interest in the property. Litigation guarantees are not expressly disallowed by section 1033.5, subdivision (b). We find the court's award was reasonable because the cost was not excessive and was necessary to conduct the litigation.

8.      *Parking Fees*

The Ramoses argue that the court's award of $48.81 in parking fees for the Romeros' counsel to attend court was error.  Recovery of parking costs is not expressly listed in section 1033.5.  (§ 1033.5, subd. (c)(4).)  The Ramoses have failed to show an abuse of discretion in denying these costs.  They assert:  "If parking costs were allowed, it can be astronomical, because attorneys would hire valet services at the Courthouse, and parties could be liable to the valet drivers for their tips."  Awards for costs not expressly listed in section 1033.5 are committed to a court's sound discretion.  The parking costs here were reasonable—they were under $50.[5]

## III

## DISPOSITION

The orders appealed from are affirmed.  Respondent New Colony Escrow, Inc. and respondents Rafael and Olivia P. Romero shall recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

---

[5]  Section 1033.5, subdivision (a)(3) authorizes "travel expenses to attend depositions."  We note there is one published case, *Ladas*, *supra*, 19 Cal.App.4th at pages 775 and 776 where the court concluded that local parking costs not incurred in connection with attending a deposition were unreasonable.  That case involved $1,680.21 in travel fees ("parking fees, cab fares, and 'mileage/parking' fees for attorneys and paralegals") that were not shown to be "necessary to conduct the litigation, as opposed to being merely convenient."  (*Ibid.*)  The instant case is distinguishable on both grounds: the costs were minimal and the Romeros stated they were incurred in order for counsel to make a court appearance.

14

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.